J-S42023-19

2019 PA Super 291

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN BATISTA, | : | |
| | : | |
| Appellant | : | No. 1130 EDA 2018 |

Appeal from the Judgment of Sentence March 28, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0007160-2017.

BEFORE: OTT, J., KUNSELMAN, J., and COLINS, J.*

OPINION BY KUNSELMAN, J                     **FILED SEPTEMBER 27, 2019**

Over the past several years, nearly half of our Sister States and this Commonwealth have legalized medical marijuana. Some States have also repealed their prohibitions against recreational use; Pennsylvania has not.

In this appeal, John Batista makes the novel argument that, because marijuana is now medically available in Pennsylvania, police officers may no longer rely upon its smell as a factor for developing probable cause. Like the trial court, we reject this theory. In certain instances, the smell of marijuana may still indicate that a crime is afoot, because the growth, distribution, possession, and use of marijuana without a state-issued permit remains illegal. Thus, the magistrate had a substantial basis to issue a search warrant for Batista's garage, and we affirm the order denying suppression.

_____

* Retired Senior Judge assigned to the Superior Court.

According to the Affidavit of Police Officer Matthew Beattie, which served as the bases for the search warrant in question, on June 19, 2017, he heard that 2015 E. Firth Street in the City of Philadelphia was "a major, weed grow-house . . . with cameras all over . . . ." Commonwealth's Suppression Ex. 1 at 2. Officer Beattie also learned from the unidentified source "that you can smell the odor of fresh marijuana coming out of the exhaust system that's located in the front window of the first floor." *Id.*

Officer Beattie and two other investigators immediately went to see and to smell the supposed grow-house. They observed "a surveillance camera . . . directed at the front door and . . . a gated-in lot, with a shed located inside of the lot, with surveillance camera focused on the front of 2015 E. Firth St." *Id.* One of the officers walked:

> by 2015 E. Firth St. and smelled a strong odor of fresh marijuana coming from the exhaust system that was running in the first floor window, which is consistent with a marijuana grow-house. P.O. Beattie, ten minutes later, [also walked] by 2015 E. Firth St. and smelled a strong odor of fresh marijuana coming from the exhaust system that was running in the first floor window, which has been used in every grow-house that P.O. Beattie has investigated.
>
> P.O. Beattie did a real estate check that revealed the owner [to be] John Bruno Batista . . .
>
> Based on the above events, your Affiant believes that marijuana is being grown and stored at the above location. Your Affiant respectfully requests that a daytime search & seizure warrant be approved for 2015 E. Firth St.
>
> Your Affiant has been a Philadelphia Police Officer for approximately (23) years and assigned to the Narcotics Bureau for approximately (20) years. The assigned is familiar with the sales of illegal narcotics in and around the

City of Philadelphia having participated in hundreds of narcotics investigations.

*Id.*

Officer Beattie brought the affidavit to a magistrate that same day. The magistrate concluded sufficient probable existed to suspect Batista of illegally growing marijuana in his garage and issued a search warrant.

The next day, police executed the search warrant and uncovered 91 marijuana plants in Batista's garage-turned-greenhouse. They arrested him and charged him with various drug-related offenses. The trial court refused to suppress the evidence. At a bench trial, the court convicted Batista of possession of marijuana with intent to deliver and possession of drug paraphernalia.[1] The trial court imposed an aggregate sentence of 11½ to 23 months' incarceration, from which Batista now timely appeals.[2]

Batista raises two issues challenging the affidavit of probable cause. First, he claims the affidavit failed to establish probable cause. **See** Batista's Brief at 5. Second, Batista contends the suppression court erroneously concluded there were no material misrepresentations within the affidavit. **See** *id.* at 6. We address each issue in turn.

A. *Probable Cause within the Four Corners of the Affidavit*

When reviewing a magistrate's decision to issue a search warrant based upon an affidavit of probable cause, our scope of review is narrow, and our

---

[1] 35 Pa.C.S.A. §§ 780-113(a)(30), 780-113(a)(32).

[2] Batista and the trial court complied with Rule of Appellate Procedure 1925.

standard of review is restrained. We review only "the information within the four corners of the affidavit submitted in support of probable cause . . . ." ***Commonwealth v. Rogers***, 615 A.2d 55, 62 (Pa. Super. 1992); ***see also*** Pennsylvania Rule of Criminal Procedure 203(D). The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." ***Illinois v. Gates***, 462 U.S. 213, 238–39, (1983) (some punctuation omitted). Thus, we "may ***not*** conduct a *de novo* review of the issuing authority's probable cause determination." ***Commonwealth v. Huntington***, 924 A.2d 1252, 1259 (Pa. Super. 2007) (emphasis added).

Batista argues that the magistrate's finding of probable cause was erroneous. He contends the presence of security cameras and ventilation systems are not, *per se*, illegal or uncommon. Batista also criticizes the lack of specificity regarding how many grow-houses Officer Beattie investigated during his 23-year career and his use of the word "narcotics."

In addition, Batista argues that "marijuana is legal in Pennsylvania, and decriminalized in Philadelphia." Batista's Brief at 18. He notes that "medical marijuana became legal in Pennsylvania more than one year before the search of [his] home when the legislature enacted the Medical Marijuana Act [("MMA")], 35 P.S. § 10231.101 *et seq.*, on April 17, 2016, with an effective date of May 17, 2016." ***Id.*** at 34. Batista then asserts the City of Philadelphia legalized marijuana for recreational use when it reduced the penalty for personal use below 30 grams to a civil offense, punishable by a $25 fine. ***See***

- 4 -

*id.* at 34-35. Thus, he contends, "given the location specified in the affidavit, the smell of marijuana is not indiciative of criminal activity. It is certainly not a circumstance that would prompt a person of reasonable caution to believe that a search of a private home should be conducted without more." *Id.* at 35.

Both the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania safeguard individuals from unreasonable governmental intrusions into the privacy of their homes. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. Amend. IV. Similarly, Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

To determine if probable cause exists, courts employ the "totality-of-the-circumstances approach . . . ." *Gates*, 462 U.S. at 230. Under this test, the Supreme Court of the United States explained:

> the probable cause standard is . . . a practical, nontechnical conception. In dealing with probable cause, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Our observation in ***United States v.***

> *Cortez*, 449 U.S. 411, . . . (1981), regarding "particularized suspicion," is also applicable to the probable cause standard . . . probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.
>
> *        *        *        *        *
>
> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 231–32, 238 (some punctuation and citations omitted).[3]

In **Gates**, the police received an anonymous letter detailing the drug-trafficking business of Mr. and Mrs. Gates, which spanned several States. To confirm the veracity of the anonymous tip, the police conducted their own investigation and tracked the couple's movements, which corroborated most of the informant's report. After obtaining a search warrant, the police searched their home and car and found the drugs. The defendants claimed the warrant was unconstitutional, and the trial judge suppressed all the evidence. The appellate courts of Illinois affirmed. The Supreme Court of the United States granted *certiorari* and reversed, because the Illinois courts had

---

[3] We note that the totality-of-the-circumstances test announced in **Illinois v. Gates**, 462 U.S. 213 (1983), is also the appropriate test under Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania. **See Commonwealth v. Gray**, 503 A.2d 921 (Pa. 1985). Thus, our analysis under **Gates** and the Fourth Amendment is conterminous with our analysis under the state constitution.

taken too technical an approach in reviewing the officers' affidavit of probable cause and the magistrate's probable cause finding.

This cases replicates the facts from *Gates*. Officer Beattie received an anonymous tip that illegal drugs could be found in Batista's residence. Also, like the unsigned letter in *Gates*, this anonymous report was highly detailed. It specified where the drugs could be found, indicated there were security cameras around the property, and described the smell of fresh marijuana coming from a first-floor window through a ventilation system.

Like the officers in *Gates*, instead of simply relying upon that report, Officer Beattie and his colleagues went to investigate. Their observations of the outside of Batista's garage confirmed what they had heard in all respects. This independent verification by the police imparted credibility to the informant's anonymous report. As such, there existed a substantial basis within the four corners of the affidavit for the magistrate to infer that the informant's ultimate claim – *i.e.*, that 2015 E. Firth St. was a marijuana grow-house – likewise had a fair probability of also being correct.

Moreover, under *Gates*, we may not adopt a cramped, hyper-technical reading of the affidavit as Batista suggests in his brief. For example, he asks us to construe the word "narcotics" in Officer Beattie's affidavit according to its definition in the Controlled Substances, Drug, Device, and Cosmetic Act, 35 P.S. § 780-101 *et seq*. Section 780-102 defines "narcotic" as opiates. Batista therefore believes that Officer Beattie's experience, as described in the affidavit, only extends to opioids and similar drugs – not marijuana.

This is precisely the overly technical, lawyerly scrutiny of an officer's affidavit that **Gates** forbids. Probable cause "affidavits are normally drafted by non-lawyers in the midst and haste of a criminal investigation . . . many warrants are — quite properly — issued on the basis of nontechnical, common-sense judgments of laymen applying a standard **less demanding** than those used in more formal legal proceedings." **Gates**, 462 U.S. at 235–36 (emphasis added).

To a layperson, the word "narcotics" can reasonably mean any illegal drug, not just opium and its derivatives as Batista asserts. Indeed, Officer Beattie is a member of Philadelphia's **Narcotics** Bureau, and his superiors assigned him to investigate a suspected marijuana grow-house. As such, the magistrate reasonably could have inferred that, from the perspective of law enforcement, Officer Beattie used the term "narcotics" in its everyday meaning – *i.e.*, **any** illegal drug. The magistrate's implied determination that Officer Beattie's training and experience extended to marijuana was reasonable and supported by substantial evidence within the affidavit.

Also, Batista attempts to parse out various averments from the affidavit; this defies the totality-of-the-circumstances test. He shaves off individual facts and asks us to review them in a vacuum. Batista erroneously isolates Officer Beattie's report of a ventilation system, which signaled to the officer that marijuana was very probably growing inside the building. **See** Batista's Brief at 29-30. Batista observes that the officer did not state "how many grow houses, if any, [he] has investigated. If this is the only 'grow house' that

[Officer Beattie] has investigated, the information is utterly useless . . . ." **Id.** at 29.

This argument disregards everything else in the affidavit. In other words, it views Officer Beattie's failure to include his full *curriculum vitae* in the absence of all the other indicia of probable cause within the affidavit. Batista cites no case law (and we know of none) for the proposition that an officer must include the number of marijuana busts he has made in an affidavit.

It was sufficient for the officer to inform the magistrate that he has 23 years on the force, with 20 of those in drug enforcement. From this, the magistrate could reasonably infer that this was probably not Officer Beattie's or the two other investigating officers' first raid on a marijuana grow-house. The magistrate was also free to draw upon his or her prior experience with Officer Beattie as an affiant, a history of which we know nothing. So it may be that the magistrate knew from prior interactions with Officer Beattie that the policeman was a trustworthy affiant with prior marijuana busts.

Lastly, we come to Battista's claim that the smell of fresh marijuana can no longer serve as an element of probable cause in Pennsylvania. He bases this claim on the fact that Philadelphia has rendered the possession of 30 grams or less for personal use a non-criminal violation. Batista likewise indicates that the use of medical marijuana is now legal in Pennsylvania. Thus, he reasons that marijuana's smell is now insufficient to give rise to probable cause.

Regardless of what law Philadelphia's City Council enacted, Pennsylvania law still holds sway there. Generally speaking, growing and distributing marijuana remain illegal. 35 P.S. §§ 780-133(a)(1),(30),(32). Indeed, the trial court convicted Batista of violating that very statute.

The Medical Marijuana Act is a limited exception to that criminal statute. Only a "grower/processor" or "dispensary", as defined under the MMA, may "receive a permit to operate as a medical marijuana organization to grow, process, or dispense medical marijuana." 35 P.S. § 10231.601. A grower is a "natural person, corporation, partnership, association, trust or other entity, or any combination thereof, which holds a permit from the Department [of Health] under this act to grow and process medical marijuana." 35 P.S. § 10231.103.

To receive a grower permit under the MMA, a person must undergo an extensive application and permitting process through the Department. *See* 35 P.S. § 10231.602 (requiring, among other things, full, financial disclosure of all backers; descriptions of responsibilities within the partnership or corporation; criminal background checks; statements of "good moral character;" title searches for the land use; and personal information for all investors).

The number of authorized growers and processors who have completed that administrative process is currently very small. The General Assembly has

capped the number of permits for growers. "The department may not initially issue permits to more than 25 growers/processors." 35 P.S. § 10231.616.[4]

Given the extremely limited number of permits that the Department has issued, we hold that, when an officer smells fresh marijuana emanating from a building that is a reported grow-house there still exists a fair probability that the marijuana inside is *illegal*. Law enforcement still holds the power and the duty to investigate that probability.

Thus, Batista has failed to persuade us that enactment of the MMA abrogates our precedents holding that the aroma of marijuana contributes to the finding of probable cause. *See Commonwealth v. Trenge*, 451 A.2d 701, 706 (Pa. Super. 1982) (stating "probable cause may be established . . . primarily upon [an officer's] sense of smell in concluding that marijuana was then present"); *see also Commonwealth v. Stoner*, 344 A.2d 633, 635 (Pa. Super. 1975) (*en banc*) (accord).

Batista's first appellate issue affords him no relief.

B. *The Alleged Material Misstatements*

As his second claim of error, Batista asserts that Officer Beattie made a material misrepresentation in the affidavit of probable cause. He argues that

---

[4] *See also* The Department of Health of the Commonwealth, "Resources for Growers and Processors: Frequently Asked Questions," available at https://www.health.pa.gov/topics/programs/Medical%20Marijuana/Pages/Growers-Processors.aspx (indicating that the 25-permit cap remains in effect) (last visited 8/23/19). We judicially notice the Department of Health's website describing its own regulatory activity as a source "whose accuracy cannot reasonably be questioned." Pa.R.E. 201(b)(2).

the ventilation system, which Officer Beattie averred was an indicator that the garage was a grow-house, was disproven at the suppression hearing. *See* Batista's Brief at 43-45. Instead, the ventilation system turned out to be an air conditioner, which, he says, would not give rise to a suspicion of criminal activity in late June. Batista asserts that the misidentification of the air conditioner as a ventilation system was material to the magistrate's finding of probable cause. *See id.* Hence, Batista asserts that the suppression court should have stricken that erroneous portion of the affidavit and suppressed the Commonwealth's evidence.

In reviewing this issue, our focus shifts from the ruling of the magistrate to the suppression court's findings of fact and conclusions of law. Therefore, our scope and standard of review shift as well.

Now, our scope of review expands to the factual findings made during the suppression hearing "to determine whether the factual findings are supported by the record. If so, we are bound by those findings." ***Commonwealth v. Howard***, 762 A.2d 360, 361 (Pa. Super. 2000). But that expansion does not reach a plenary scope of review. "[W]e are limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the record as a whole." ***In re L.J.***, 79 A.3d 1073, 1080 (Pa. 2013). Also, we may "not simply comb through the record to find evidence favorable to a particular ruling. Rather, [we must] look to the specific findings

- 12 -

of fact made by the suppression court," based upon the record that was developed in the suppression court. *Id.* at 1085.

Our standard of review for the suppression court's factual findings remains deferential, while our standard for reviewing that court's legal conclusions reaches its zenith. As the Supreme Court of Pennsylvania has stated:

> When we state that part of our "task" is to determine whether the record supports the suppression court's factual findings, this is another way of expressing that our standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations. In other words, if the record supports the suppression court's findings, we may not substitute our own findings. In stark contrast, our standard of review of the suppression court's legal conclusions is *de novo*: appellate courts give no deference to the suppression court's legal conclusions.

*Id.* at 1080 n.6. (some punctuation and citations omitted).

Applying our deferential standard of review to the suppression court's factual findings exposes the leap in Batista's logic. His argument presumes, without directly attacking the suppression court's finding to the contrary, that Officer Beattie made a ***material*** misstatement in the affidavit. However, the suppression court, as sole finder of fact, concluded that Officer Beattie merely misidentified the air conditioner as a ventilation system. In addition, it did not find that that mistake was material to the development of probable cause. In other words, even if Officer Beattie had correctly identified the ventilation system as an air conditioner, the remaining indicia of probable cause coupled

- 13 -

with the anonymous tip would still have created probable cause to support the magistrate's issuance of the warrant.

We have said "courts may uphold a warrant if an independent basis exists to support a finding of probable cause; however . . . a court must invalidate a search warrant if **the sole basis** for finding probable cause is the material misstatements." **Commonwealth v. Antoszyk**, 985 A.2d 975, 982 (Pa. Super. 2009), *affirmed*, 38 A.3d 816 (Pa. 2012) (emphasis added). In applying this rule, the suppression court explained its findings of fact and opined:

> During the evidentiary hearing, this court made a finding that Officer Beattie testified credibly when he stated that he believed the air conditioner unit located in [Batista's] first floor window to be an exhaust system as it was emitting a strong smell of fresh marijuana, as had been similarly described by the informant. Officer Beattie testified that at the time he prepared the affidavit he was not able to determine that this exhaust system was an air conditioner, because he had not been inside the house.
>
> On cross-examination, Officer Beattie explained that the wording in the affidavit stating that he had seen an "exhaust system" in every grow house he had investigated did not mean this particular exhaust unit found in [Batista's] window but of an exhaust system generally. Further, Officer Beattie testified that in his experience, grow houses also utilize air conditioners as exhaust systems and even though it was the month of June and the weather was hot, "you don't smell marijuana coming out of it either."
>
> Upon reviewing Officer Beattie's testimony at the evidentiary hearing, as well as photographs of the subject air conditioner (exhaust system) and the affidavit of probable cause, this court ruled that Officer Beattie's statement in the affidavit was not a misstatement, but was merely his description of what he observed from his limited

- 14 -

viewpoint. As such, this court properly ruled that Officer Beattie did not deliberately, knowingly, or with reckless disregard misrepresent what he had observed in the window of [Batista's] property in the supporting probable cause affidavit.

Moreover, had Officer Beattie been aware that the exhaust system was in fact an air conditioner and had placed that information in the supporting affidavit, along with the accompanying observations of the strong smell of fresh marijuana, the surveillance cameras and the corroborated information supplied by the informant, that it was a major weed grow house, this would have been equally sufficient to establish the requisite probable cause to support the issuance of a search warrant.

Therefore, [Batista's] contention that the affidavit of probable cause contained a knowing and deliberate material misstatement of fact and that when excised from the affidavit it would have be insufficient to establish the probable cause necessary to support the issuance of the search warrant is without merit.

Trial Court Opinion, 11/15/18, at 8-9.

We agree with the well-reasoned analysis of the suppression court and adopt it as our own. Accordingly, we dismiss Batista's second and final claim of error.

Judgment of sentence affirmed.

Judge Colins joins this Opinion.

Judge Ott concurs in the result.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/27/19