J-A29010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DESHAWN BROWN | : | |
| | : | |
| Appellant | : | No. 3 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 17, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004434-2019

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 02, 2020**

Appellant, Deshawn Brown, appeals from the December 19, 2019 Judgment of Sentence entered in the Dauphin County Court of Common Pleas following his conviction of two counts of Possession with Intent to Deliver ("PWID"), and one count each of Possession of Drug Paraphernalia and Resisting Arrest.[1]  Appellant challenges the denial of a pre-trial Motion to Suppress and the sufficiency of the Commonwealth's evidence.  Upon review, we affirm.

The factual and procedural history is as follows.  In August 2019, Appellant was under the supervision of the Dauphin County Probation Department for prior PWID convictions.  As a part of his probation, Appellant

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), (a)(32); and 18 Pa.C.S. § 5104, respectively.

agreed, *inter alia*, to the following terms and conditions: 1) that he would not possess over $50 in cash without validation of its source; 2) that he would allow the Probation Department to view his cell phone to check for drug activity; 3) that he would not possess, use, or have available to his control any drugs or drug paraphernalia; 4) that he would follow the Probation Officer's ("PO") instructions and advice; and 5) that a PO would walk through Appellant's residence on the first home visit, and may walk through on additional home visits.

On August 7, 2019, PO Rick Anglemeyer and PO Brandon Rigel arrived at Appellant's residence, which was an apartment building with several one-room apartments inside, for a first-time home visit. They checked the front and rear of the building to see if any doors were open. While at the rear entrance, PO Anglemeyer, who had 15 years' experience as a PO, observed Appellant walk out the rear door and turn away. PO Anglemeyer immediately smelled "an overwhelming smell of burnt marijuana" coming from Appellant. N.T. Motion Hearing, 11/25/19, at 6.

PO Anglemeyer called Appellant's name and instructed Appellant to come to him; Appellant complied. When PO Anglemeyer began to question Appellant, Appellant attempted to use his cell phone to send a text message. PO Anglemeyer requested to view the cell phone and was able to gain control of it despite Appellant's refusal. Appellant consented to a search of his person, and PO Anglemeyer recovered a "thick wad of cash." ***Id***. The POs detained Appellant and escorted him to his apartment. Appellant was visibly upset and

yelled towards the apartment door as they approached. When they were right outside, Appellant broke loose, barged into the apartment, and grabbed a large clear baggie of marijuana that was on a dresser next to a large knife. Appellant's girlfriend, Kathryn Galaskas ("Girlfriend"), who was also on probation, was inside the one-room apartment. PO Anglemeyer and PO Rigel subdued Appellant and Girlfriend, placed them outside of the apartment, and radioed for police assistance.

Police Officer Maril Foose arrived at the scene, read Appellant his *Miranda*[2] rights, and obtained verbal consent from Appellant to search his apartment and his car. Prior to searching the apartment, Appellant advised Officer Foose that there were illegal drugs inside the apartment. Police recovered $4,500, a large bag of marijuana, marijuana wax, one plastic cup, one digital scale, and a box of sandwich bags. Appellant took ownership of the cash and contraband by stating that everything belonged to him. Police officers arrested him.

On August 8, 2019, the Commonwealth charged Appellant with PWID, Possession of Drug Paraphernalia, and Resisting Arrest. On November 13, 2019, Appellant filed an Omnibus Pre-Trial Motion asserting that the POs searched Appellant and Appellant's residence without reasonable suspicion of criminal activity or a violation of probation conditions, and therefore that the

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

court should suppress any evidence obtained because of that search. Motion, 11/14/19, at ¶¶11-32.

The suppression court held a hearing and heard testimony from PO Anglemeyer and Police Officer Foose, who testified to the above facts. The suppression court also heard testimony from Girlfriend, who testified, in sum, that she opened the door of the apartment, Appellant ran into the apartment to protect her, and the POs searched the apartment immediately after detaining Appellant and her. N.T. Motion Hearing, 11/25/19, at 30-40.

The suppression court made a finding that the probation officers had reasonable suspicion to search Appellant and his residence due to Appellant's suspected drug use, Appellant's refusal to turn over his cell phone, the large amount of cash in Appellant's wallet, and Appellant's rush into his apartment in an attempt to conceal contraband. Order, filed 12/6/19, at 2. Therefore, the suppression court denied the Motion. *Id*. at 1.

On December 17, 2019, the trial court held a stipulated non-jury trial, found Appellant guilty of all charges, and sentenced Appellant to an aggregate term of 6 to 23 months' incarceration.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

  A. Did the suppression court err when it determined that the Appellant's initial seizure by probation outside of his home was lawful?

B. Did the suppression court err when it determined that the probation department had reasonable suspicion to search [] Appellant's apartment?

C. Did the suppression court err when it determined that a warrant was not required prior to the search of [] Appellant's apartment when no exception to the warrant requirement existed?

D. Did the suppression court err when it found [] Appellant guilty of [PWID] marijuana because there was insufficient evidence, even after viewing the evidence in the light most favorable to the prosecution, for the factfinder to find [] Appellant guilty beyond a reasonable doubt in the absence of any evidence regarding the element of intent?

Appellant's Br. at 2 (some capitalization omitted).

In his first three issues, Appellant challenges the suppression court's denial of his Motion to Suppress. When we review the denial of a Motion to Suppress, "we are limited to considering only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1198 (Pa. Super. 2018) (*en banc*) (citation and internal quotation marks omitted). When the testimony and other evidence support the trial court's findings of fact, this Court is bound by them and we "may reverse only if the court erred in reaching its legal conclusions based upon the facts." *Id*. (citation omitted).

We are highly deferential to the suppression court's factual findings and credibility determinations. *Commonwealth v. Batista*, 219 A.3d 1199, 1206 (Pa. Super. 2019). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to

their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). If the record supports the suppression court's findings, we may not substitute our own findings. ***Bastista***, 219 A.3d at 1206. However, we give no deference to the suppression court's legal conclusions and review them *de novo*. ***Id***.

"The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." ***Commonwealth v. Neal***, 151 A.3d 1068, 1071 (Pa. Super. 2016) (citation omitted). Importantly, "[o]nce a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-48 (Pa. 2012) (citing Pa.R.Crim.P. 581(H)).

Appellant avers that the PO's search of Appellant and subsequent search of his apartment was illegal, and the suppression court should have granted his Motion to Suppress evidence obtained as a result of the illegal search and seizure. Appellant's Br. at 4-5.

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. ***In re D.M.***, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending

levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." ***Commonwealth v. Beasley***, 761 A.2d 621, 624 (Pa. Super. 2000).

Probationers have limited Fourth Amendment rights because of the diminished expectation of privacy they agree to when they sign their probation agreement. ***Commonwealth v. Parker***, 152 A.3d 309, 316–17 (Pa. Super. 2016). Pursuant to 42 Pa.C.S. § 9912, a probation officer may search a probationer he or she is supervising if there is "reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision." 42 Pa.C.S. § 9912(d)(1)(i). Also pursuant to Section 9912, a probation officer may conduct a property search if there is "reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." ***Id***. at (d)(2). Further, Section 9912 instructs a PO, absent exigent circumstances, to obtain prior approval of a supervisor to conduct a property search. ***Id***. at (d)(3). Nevertheless, the statute makes clear that no violation of Section 9912 "shall constitute an independent ground for suppression of evidence in any probation and parole or criminal proceeding." ***Id***. at (c).

"In establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a person of reasonable caution in the belief that the action taken was appropriate." ***Parker***, 152 A.3d at 318 (citation omitted).

"This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability." *Id*. (citation omitted).

Finally, the threshold question "is whether the probation officer had a reasonable suspicion of criminal activity or a violation of probation **prior** to the search." *Id*. (citation omitted; emphasis added). "Accordingly, the fact that a probationer signs a consent form permitting warrantless searches as a term of his probation is insufficient to permit a search absent reasonable suspicion of wrongdoing." *Id*. (citation omitted).

In his first three issues, Appellant argues that the suppression court erred when it determined that PO Anglemeyer had reasonable suspicion to stop and search Appellant outside, and that there was reasonable suspicion to conduct a warrantless search of Appellant's apartment.[3] Appellant's Br. at 5-10, 13, 15.

The suppression court determined that PO Anglemeyer, who had 15 years of experience as a PO, had reasonable suspicion to believe that Appellant violated the terms of his probation because Appellant committed

---

[3] Appellant makes a specific argument that the initial interaction between PO Anglemeyer and Appellant rose to the level of an investigative detention when PO Anglemeyer told Appellant to stop and come back. Appellant's Br. at 8. This argument is waived as the Appellant did not raise it before the suppression court, and, as such, the court did not address it. *See* Pa.R.A.P. 302 (a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

three probation violations in the presence of PO Anglemeyer. Trial Ct. Op., filed 3/19/20, 6-7. The court made findings that the smell of marijuana on Appellant's person and Appellant's refusal to let PO Anglemeyer view his cell phone constituted violations of Appellant's probation agreement. *Id*. at 7. The court opined:

> Due to the smell of burnt marijuana and the cell phone issue, the probation officer asked for consent to search Appellant's wallet. [A]ppellant consented and a "wad of cash" was found in Appellant's wallet. This was another violation of Appellant's rules of probation. As such, the Appellant committed **three violations in front of the probation officer**. Thus, the probation officer had reasonable suspicion that [] Appellant was violat[ing] his terms of probation (and the law) and was permitted to detain [] Appellant.

*Id.* at 7 (emphasis added). Moreover, the court determined that these combined violations provided "reasonable suspicion to suspect that Appellant was in violation of his probation prior to the search of the apartment." *Id*. at 6. Finally, the court emphasized that, despite the fact that there was reasonable suspicion to search Appellant's apartment, Appellant consented to the search of the apartment. *Id*. at 9.

We agree with the suppression court's conclusions. The facts support the suppression court's finding that PO Anglemeyer had reasonable suspicion to believe Appellant violated his probation. We further conclude that the court did not err in its legal conclusion that the search and seizure was legal because it was supported by reasonable suspicion. Thus, no relief is due.

Appellant also argues that the POs violated Section 9912's requirement that, absent exigent circumstances, a PO should obtain prior approval from a supervisor to conduct a property search. Appellant's Br. at 14-15 (citing 42 Pa.C.S. § 9912(d)(3)). Whether the POs violated a Section of 9912 is of no moment. As stated above, no single violation of Section 9912 "shall constitute an independent ground for suppression of evidence[.]" 42 Pa.C.S. § 9912(c). Accordingly, Appellant's argument is devoid of merit.

In his final issue, Appellant challenges the sufficiency of the evidence. He avers that the Commonwealth presented insufficient evidence to demonstrate that he was guilty of PWID in the absence of any evidence regarding the element of intent. Appellant's Br. at 15. To support this claim, Appellant advances the lone argument that the Commonwealth did not meet its burden to prove PWID beyond a reasonable doubt because the evidence the Commonwealth relied on was "tainted from the illegal search/seizure and should have been excluded." *Id*. at 16. As discussed above, we find no error in the suppression court's conclusion that the search and seizure in question was legal. Accordingly, this argument lacks merit.

In conclusion, the trial court did not err when it found that there was reasonable suspicion to believe that Appellant violated his probation, concluded that the search of Appellant's person and apartment was legal, and denied Appellant's Motion to Suppress.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/02/2020