J-A20040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS JAMAR ALLEN | : | No. 2063 EDA 2023 |

Appeal from the Order Entered July 11, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0006487-2021

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and DUBOW, J.

MEMORANDUM BY DUBOW, J.: **FILED OCTOBER 17, 2024**

The Commonwealth appeals from the July 11, 2023 order entered in the Montgomery County Court of Common Pleas granting the motion to suppress filed by Appellee, Thomas Jamar Allen. After careful review, we conclude that the suppression court erred as a matter of law and, thus, we reverse.

**A.**

We glean the relevant factual and procedural history from the suppression court opinion. During the week of September 15, 2020, Detectives Michael Fedak and James Lavin of the Montgomery County Detective Bureau met with a confidential informant ("CI-1") who had previously assisted the Bureau in numerous other drug cases. CI-1 identified Appellee as a "kilogram-level cocaine dealer" who had been selling cocaine for at least two years. Suppression Ct. Op., 12/7/23, at 2. CI-1 also described Appellee's two vehicles: a maroon Chevy Silverado and a white Jaguar.

The detectives began surveillance near Appellee's residence on January 28, 2021.[1] They observed interactions between Appellee and alleged buyers on January 28, March 3, March 8, March 15 and 16, and May 20, 2021, each of which followed a similar pattern: (1) Appellee left his residence in either his Silverado or his Jaguar; (2) detectives followed him to a parking lot, where he met the alleged buyer; (3) the buyer then entered or leaned into Appellee's vehicle, or Appellee entered their vehicle; and (4) Appellee and the buyer parted ways approximately one minute later. Detectives also noted that they had seen three of the alleged buyers meet with Appellee on two occasions each. Detectives concluded that these brief interactions were drug sales based on CI-1's information and their training and experience.

Following one of their March observations, the detectives apprehended, and recovered cocaine from the buyer, who then became a confidential informant ("CI-2"). CI-2 told detectives that he or she had bought cocaine from Appellee 30 times in the past 3 months via meetings similar to the ones the detectives had observed. CI-2 refused to participate in a controlled buy due to fear for his or her safety, but he or she gave the detectives Appellee's new cell phone number and stated that Appellee believed that police officers were following him.

In April and May 2021, Appellee began using "counter-surveillance" driving techniques, such as abruptly turning and changing lanes, when

_____

[1] The affidavit of probable cause indicates that the detectives were conducting electronic as well as physical surveillance.

detectives attempted to follow him. *Id.* at 7. Accordingly, detectives suspended physical surveillance on May 25, 2021. On August 31, 2021, detectives again attempted to follow Appellee, but he continued to use evasive counter-surveillance driving techniques.

On September 7, 2021, detectives observed Appellee as he left his residence in his Jaguar and drove to a car wash. There, a man walked to Appellee's vehicle, had a brief interaction with him, then walked to a vehicle owned by a third person. Detectives identified the man, who had several prior convictions for Possession with Intent to Deliver ("PWID"). Based on their training and experience, detectives determined that he was a middleman for a cocaine transaction between Appellee and the owner of the third vehicle. On September 24, 2021, detectives observed two interactions—one outside of a residence and the other in a parking lot—between Appellee and alleged buyers that were similar to those observed in January, March, and May.

On September 24, 2021, detectives applied for search warrants for Appellee's residence, his person, and his Silverado and Jaguar, annexing an affidavit of probable cause that detailed the above facts and detailed the detectives' training and knowledge of the drug trade.[2]

The magistrate issued the search warrants. When detectives executed the warrants, they recovered cocaine, some of which was packaged for sale,

---

[2] The conclusion paragraph of the affidavit of probable cause also references the electronic surveillance of Appellee's residence but does not include any details of what that surveillance revealed. Suppression Ct. Op. at 10.

marijuana, plastic bags, and $1,825.  As a result, the Commonwealth charged Appellee with PWID and related offenses.

Appellee filed a motion to suppress asserting that the search warrants were not supported by probable cause.  Following a hearing on October 17, 2022, the court granted Appellee's motion and suppressed the evidence.

**B.**

The Commonwealth filed a timely interlocutory appeal pursuant to Pa.R.A.P. 311(d).[3]  Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issues for our review:

I.   Did the suppression court err by failing to give deference to the issuing authority's probable cause determination and conducting *de novo* review?

II.  Did the suppression court err when it concluded that the information gathered during the first few months of an ongoing investigation was stale even though the affiants observed suspected drug transactions hours before applying for and obtaining the warrants?

Commonwealth's Br. at 4.

**C.**

Our review of the grant of a suppression motion is limited to determining "whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct."  ***Commonwealth v. Carmenates***, 266 A.3d 1117, 1122-23 (Pa. Super. 2021) (*en banc*) (citation

---

[3] Rule 311(d) provides that "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."  Pa.R.A.P. 311(d).

omitted). We defer to the suppression court's factual findings if they are supported by the record. **Commonwealth v. Batista**, 219 A.3d 1199, 1206 (Pa. Super. 2019). However, we give no such deference to the suppression court's legal conclusions, which we review *de novo*. **Id.**

It is well-established that "[n]o search warrant shall issue but upon probable cause supported by one or more affidavits[.]" Pa.R.Crim.P. 203(B). "Probable cause exists where, based upon a totality of the circumstances set forth in the affidavit of probable cause, including the reliability and veracity of hearsay statements included therein, there is a fair probability that . . . evidence of a crime will be found in a particular place." **Commonwealth v. Fletcher**, 307 A.3d 742, 746 (Pa. Super. 2023) (citation omitted). A police officer's experience can be a "relevant factor in determining probable cause" if the officer can establish a "nexus between his experience and the search[.]" **Commonwealth v. Randolph**, 151 A.3d 170, 183 (Pa. Super. 2016).

When determining whether to issue a warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision . . . . And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." **Commonwealth v. Gray**, 503 A.2d 921, 925 (Pa. 1985) (alterations and internal quotation marks omitted) (quoting **Illinois v. Gates**, 462 U.S. 213, 238-39 (1983)). Importantly, "the deference afforded a magistrate judge ensures that, if a substantial basis exists to support the magistrate's probable cause finding, the trial court must uphold that finding even if a different

magistrate judge might have found the affidavit insufficient[.]" *Commonwealth v. Gagliardi*, 128 A.3d 790, 7995 (Pa. Super. 2015) (citation, internal quotation marks, and alterations omitted). "A grudging or negative attitude by reviewing courts toward warrants [] is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate. . .warrant[s] by interpreting affidavit [s] in a hypertechnical, rather than a commonsense, manner." *Gates*, 462 U.S. at 236 (citations and quotation marks omitted).

If the information supporting a warrant application is "too old, [then] the information is stale, and probable cause may no longer exist." *Commonwealth v. Hoppert*, 39 A.3d 358, 363-64 (Pa. Super. 2012) (observing that emails containing pornographic material sent six months prior were not stale because the "nature of the crime and the type of evidence," not just age, determines staleness). "If the issuing officer is presented with evidence of criminal activity at some prior time, this will not support a finding of probable cause as of the date the warrant issues, unless it is also shown that the activity continued up to or about that time." *Int. of Y.W.-B.*, 265 A.3d 602, 633 (Pa. 2021) (citation omitted). In other words, "a showing that the criminal activity is likely to have continued up to the time of the issuance of the warrant will render otherwise stale information viable." *Commonwealth v. Martinez*, 649 A.2d 143, 146-47 (Pa. Super. 1994) (citation omitted) (finding that information was not stale where police received tip from a reliable informant in early March that a residence was a cocaine

stash house, corroborated the tip with surveillance throughout March and April, and the CI saw one co-defendant with crack cocaine 48 hours before applying for warrant). To demonstrate ongoing conduct, evidence "must establish actual continuity of the illegal enterprise." ***Commonwealth v. Eazer***, 312 A.2d 398, 400 (Pa. 1973).

\*

The Commonwealth's claims are related and we, thus, address them together. First, the Commonwealth argues that the suppression court failed to give proper deference to the magistrate's probable cause determination. Commonwealth's Br. at 42. Specifically, the Commonwealth maintains that the court improperly conducted a *de novo* review that focused on the Commonwealth's charging decisions and the "perceived shortcomings" in the affidavit, such as the lack of confirmed transactions between May and September, and the lack of specific information about the electronic surveillance. ***Id.*** at 46-48, 51-52.

The Commonwealth also argues that there was a substantial basis for the magistrate's probable cause determination, and therefore, the trial court erred in concluding that the information in the affidavit was stale. ***Id.*** at 52. In support, the Commonwealth notes that the detectives confirmed the information received from the CIs and observed one confirmed and several suspected drug transactions, including hours before they applied for the warrants, which indicated that Appellee was engaged in ongoing cocaine sales. ***Id.*** at 57.

- 7 -

The suppression court found that the information in the affidavit of probable cause was stale by September and, thus, did not support issuing the warrants, "even given the substantial deference [it] must afford the magistrate's probable cause determination." Suppression Ct. Op. at 19. Specifically, the court noted that there were no "intervening confirmed drug transactions" between March and September, detectives only observed "brief encounters" with alleged buyers on September 7 and 24, 2021, and the affidavit of probable cause "does not provide any dates, times, or specific activity" about the electronic surveillance of Appellant's home that would support "an inference of criminal activity[.]" *Id.* at 13, 18-19. Finally, the court determined that evidence that Appellee had been involved in an ongoing cocaine-selling operation for two years did not support finding probable cause in September 2021 because the Commonwealth had charged Appellee with PWID, not Corrupt Organizations. *Id.* at 18.

Based on our review of the suppression court record and relevant case law, we discern no reason to disturb the magistrate's probable cause determination. As the affidavit of probable cause indicates, the detectives involved are experienced in the investigation of drug crimes. They observed one confirmed transaction and a pattern of suspected transactions between January and May 2021 and again in September 2021, including two suspected transactions on the day the detectives applied for the search warrant. Each of these transactions occurred in the same manner and were similar to the transactions CI-2 admitted to engaging in with Appellant. The transactions

that occurred in September, including on the day of the detective's application for a search warrant, corroborated the information received between January and May and, thus, indicated a reasonable probability that Appellant was engaging in the same type of drug sales, indicating that he was involved in an ongoing course of conduct that "likely . . . continued up to the time of the issuance of a warrant," and which "render[ed] otherwise stale information viable." **Martinez**, 649 A.2d 143. (citation omitted).

Thus, under the totality of the circumstances, the magistrate had a substantial basis to conclude that it was more likely than not that Appellant was involved in criminal activity to support the issuance of the search warrants. Accordingly, the suppression court should have deferred to the magistrate's decision. Instead, the court conducted a *de novo* review of the affidavit by considering individual pieces of evidence in isolation, rather than simply ensuring that the magistrate had a substantial basis for concluding that there was probable cause. We, thus, conclude that the court erred as a matter of law when it granted Appellee's motion to suppress.

Order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/17/2024