J-A02005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAYNE MOURS | : | |
| | : | |
| Appellant | : | No. 665 WDA 2023 |

Appeal from the Judgment of Sentence Entered May 8, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006981-2021

BEFORE: KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: March 28, 2025**

Shayne Mours appeals from the judgment of sentence imposed for his convictions for driving under the influence (four counts) and reckless driving.[1] He challenges the denial of his motion to suppress blood test results, arguing that the hospital personnel who drew his blood were acting as state agents. Because the record supports the suppression court's finding that the hospital staff drew Mours' blood for independent medical purposes, not at the direction of the police, we affirm.

Officer Daniel Kidder of the Kennedy Township Police Department charged Mours with the above crimes following a one-car accident on May 30, 2021. Mours moved to suppress. The suppression court heard Mours' motion on February 9, 2023.

_____

[1] 75 Pa.C.S. §§ 3802(d)(2), (d)(3), (c), and (a)(1) and 3736(a), respectively.

The suppression court recounted pertinent facts from the hearing[2]:

> [On May 30, 2021, in response to a vehicle accident,] EMS and [Kennedy Township Police] arrived at the scene to find [Mours'] car rolled over a hillside and … upside down on its roof. [Officer Daniel Kidder] arrived first and had [Mours] rest until the paramedics arrived. Both the EMS and the officer saw injuries on [Mours] and since it was determined that he had not been wearing a seatbelt, they were concerned about his safety and condition. It was the EMS that suggested [Mours] go to the hospital. [Mours] refused at first, but then consented to go. [Officer Kidder] never spoke with or encouraged [Mours] to go to the hospital. [EMS Chief Brandon] Rowland smelled alcohol on [Mours] and informed Officer Kidder.

Suppression Court Opinion, 3/1/24, at 5–6 (record citation omitted). There was no evidence that Mours consented to a blood draw at the hospital. Instead, the record reflects that hospital personnel had to restrain and drug Mours before they were able to obtain a sample of his blood. Officer Kidder subsequently obtained a warrant for the results of the analysis of Mours' blood.

The court denied Mours' motion to suppress. Mours proceeded to a stipulated non-jury trial, where he was convicted of all charges. On May 8, 2023, the court sentenced Mours to 90 to 180 days in jail, 18 months of

_____

[2] Despite the "unambiguous mandate" of Pennsylvania Rule of Criminal Procedure 581(I), as well as Mours' motion for the same, the suppression court did not enter findings of fact and conclusions of law after the hearing. *See Commonwealth v. Sharaif*, 205 A.3d 1286, 1289 (Pa. Super. 2019) (quoting *Commonwealth v. Millner*, 888 A.2d 680, 689 (Pa. 2005)). We remind the suppression court that filing an opinion after the case has been appealed "is no substitute" for its Rule 581(I) obligation. *Commonwealth v. Grundza*, 819 A.2d 66, 68 n.1 (Pa. Super. 2003). However, because the court's subsequent opinion explains its ruling, and because Mours does not protest the procedure employed, we accept the record as presented. *Commonwealth v. Rivera*, 311 A.3d 1160, 1162 n.2 (Pa. Super. 2024).

concurrent probation, and a $1500.00 fine. Mours timely appealed. Mours and the suppression court complied with Pennsylvania Rule of Appellate Procedure 1925. In its Rule 1925 opinion, the suppression court explained its rejection of Mours' claim that hospital staff drew his blood for the purpose of assisting the police in their investigation.

Mours presents one issue:

> Did the trial court err in denying suppression as hospital staff, at the direction of police, conducted an illegal search and seizure when they drew Mr. Mours' blood without a warrant, consent or exigent circumstances?

Mours' Brief at 5 (capitalization omitted).

Mours contends that the hospital staff drew his blood at the direction of the police, making them state actors whose constitutional violations could result in the suppression of evidence. Mours points to the following evidence in support of his contention:

- Chief Rowland testified that Officer Kidder said "that he would be seeking a warrant for a blood draw," and Chief Rowland passed that information on to the emergency medical technicians.

- Officer Kidder testified that after Chief Rowland said that he smelled alcohol, Officer Kidder "said tell [the hospital] we're going to request a blood draw."

- The search warrant that Officer Kidder obtained for the results of the blood draw analysis said, "I asked [Chief Rowland] to relay to [the hospital] to do a blood draw on Mours and I will apply for a warrant for the blood."

- The 911 call notes say, "PD requested that EMS tell the hospital that they will be attempting to get a warrant for the blood draw."

Assuming the hospital staff were state actors, Mours argues that their forcible seizure of his blood did not comply with applicable law. Therefore, he submits that the suppression court should have suppressed the information police later obtained by a warrant.

When this Court reviews an order granting or denying suppression, we first "determine whether the factual findings are supported by the record. If so, we are bound by those findings." *Commonwealth v. Batista*, 219 A.3d 1199, 1206 (Pa. Super. 2019). This is because the suppression court observed the hearing firsthand and could judge the credibility of witnesses and resolve conflicts in facts. *Commonwealth v. Fahy*, 516 A.2d 689, 695 (Pa. 1986). We determine whether the record supports the suppression court's factual findings by considering "only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted." *Commonwealth v. Shaw*, 246 A.3d 879, 883 (Pa. Super. 2021) (quoting *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017)). After our "highly deferential" review of the facts, we review the legal conclusions of the court below *de novo*, that is, with "no deference." *Batista*, 219 A.3d at 1206 (quoting *In re L.J.*, 79 A.3d 1073, 1080 n.6 (Pa. 2013)).

Here, the suppression court found as a factual matter that the hospital staff did not draw Mours' blood at the direction of Officer Kidder but rather for independent medical reasons. Suppression Court Opinion, 3/1/24, at 3–4. While there was some evidence of facts to the contrary, the Commonwealth presented enough testimony, which the suppression court found credible, to

support that court's factual findings. Specifically, Chief Rowland testified that hospitals ordinarily draw blood after vehicle accidents involving trauma or a high mechanism of injury (like in this case where Mours' car was on its roof). Officer Kidder testified that neither he, nor any other officer, directed the hospital to perform a blood draw. Officer Kidder explained that he has no power to tell paramedics or hospital staff to draw blood, and paramedics have ignored his previous requests for blood draws. The record thus supports the suppression court's finding that hospital staff drew Mours' blood for medical reasons. We are bound by this resolution of conflicting testimony.

When a hospital draws a patient's blood "on its own initiative for its own purposes," this is a private action that does not implicate the patient's Fourth Amendment rights. *See Commonwealth v. Seibert*, 799 A.2d 54, 63 (Pa. Super. 2002) (citing *Commonwealth v. Riedel*, 651 A.2d 135, 138 (Pa. 1994)). Here, accepting the suppression court's factual findings, we conclude that it properly denied Mours' motion to suppress evidence. Mours' issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 3/28/2025