J-A29001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMBIORIS A. PERALTA-GONZALEZ | : | |
| | : | |
| Appellant | : | No. 1093 MDA 2019 |

Appeal from the Judgment of Sentence Entered May 20, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000714-2018

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 31, 2020**

Appellant, Ambioris A. Peralta-Gonzalez, appeals from the May 20, 2019 Judgment of Sentence entered in the Berks County Court of Common Pleas following his jury conviction of Possession of a Controlled Substance, Possession with Intent to Deliver ("PWID"), and Possession of Drug Paraphernalia.[1]  Appellant challenges the denial of his Motion to Suppress, and the weight and sufficiency of the Commonwealth's evidence.  After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(16), (a)(30), and (a)(32), respectively.  The drug paraphernalia the jury convicted Appellant of possessing pursuant to Section 780-113(a)(32) was the cellophane packaging surrounding the softball-sized ball of more than 200 grams of cocaine.

On December 15, 2017, at approximately 8:30 AM, Pennsylvania State Police Trooper Justin Hope observed Appellant, who was driving a 2008 Jeep Cherokee, change lanes without using his turn signal. Trooper Hope effectuated a traffic stop.[2]

The Jeep had a New York license plate. Appellant, a male, was the Jeep's only occupant. Appellant, who speaks primarily Spanish, informed Trooper Hope, who speaks primarily English, that his friend "Robert" had purchased the Jeep a few months earlier at auction, and that "Robert" had loaned it to Appellant. Trooper Hope determined, however, that, although the Jeep was an older model, it had been recently registered to a woman in Brooklyn, New York.

Upon request, Appellant produced his New Jersey issued driver's license indicating that he lived in Patterson, New Jersey. Appellant also produced the Jeep's vehicle registration and insurance cards, none of which were in Appellant's name. Appellant had no personal effects in the passenger compartment of the Jeep other than a cell phone and charger, and the ring holding the Jeep ignition key had only that single key on it.

Appellant told Trooper Hope that he was traveling from New Jersey to pick up a friend in Reading to go to an auto auction in Lancaster to buy a car, and then both he and his friend were going to return to New Jersey.

---

[2] Changing lanes without activating a turn signal is a violation of 75 Pa.C.S. § 3334 for which Trooper Hope subsequently wrote Appellant a ticket. N.T. Suppression Hr'g, 11/2/18, at 51.

Appellant's travel plans did not make sense to Trooper Hope and Trooper Hope found Appellant's itinerary "significant" because Appellant was coming from Patterson, New Jersey, which he characterized as a known "major source of narcotics . . . especially for heroin[,]" and going to Reading, a "major destination area for narcotics."[3]

Prior to pulling Appellant over, Trooper Hope had noticed that the spare tire mounted to the undercarriage of the Jeep appeared to be hanging several inches below the Jeep's rear bumper. This indicated to him that the tire was likely concealing a false compartment under the Jeep. Thus, during the traffic stop, Trooper Hope crawled under the rear of the Jeep and, using a flashlight, inspected its undercarriage. Trooper Hope observed a false compartment above the spare tire bolted to the undercarriage and painted to match the undercarriage. Based upon this observation, Trooper Hope returned to his vehicle and requested that a Pennsylvania State Police K-9 unit search the Jeep.

While he waited for the K-9 unit to arrive, Trooper Hope, using his limited Spanish vocabulary and Google Translate, obtained Appellant's oral consent to search the vehicle for drugs and guns. In addition, Trooper Hope gave Appellant a consent to search form written in Spanish on which Appellant wrote his first name on the signature line. Trooper Hope explained to

_____

[3] N.T. Suppression Hr'g 11/2/18, at 29, 35, 91-92.

Appellant that he did not have to consent to the search, to which Appellant responded, that he "had no problem."[4]

When the K-9 unit arrived, the dog "alerted" to narcotics in the rear cargo area of the Jeep. Trooper Hope then opened the hidden compartment and recovered a cellophane-wrapped softball-sized ball of cocaine weighing 209.72 grams.

At approximately 10:40 AM, Trooper Edgardo Lugo arrived to assist Trooper Hope by providing translation services. Appellant informed Trooper Lugo that the Jeep did not belong to "Robert," but instead belonged to another person who owed "Robert" money. Appellant reported that "Robert" was holding the Jeep as collateral and that he had permitted Appellant to use it. Appellant did not offer the troopers any proof that either the registered owner of the Jeep or "Robert" had authorized Appellant to use it. Appellant also informed Trooper Lugo that he had deleted his Reading friend's contact information and their text message conversation from his phone.[5]

Trooper Hope arrested Appellant and charged him with various drug possession and trafficking offenses.

Appellant filed, *inter alia*, Motions to Suppress Physical Evidence and Statements. The suppression court held hearings on Appellant's Motions at which Trooper Hope, Appellant, and Maria Lopez, a translation expert,

_____

[4] N.T. Suppression Hr'g, 11/2/18, at 56-57.

[5] Transcript of Dash Camera Video in English/Spanish, 12/15/17, at 29.

testified. The suppression court also admitted the transcript of conversations between Appellant and the police officers recorded by Trooper Hope's dash camera. Following the hearings, the court denied Appellant's suppression motions, concluding that Appellant did not have a reasonable expectation of privacy in the vehicle. Suppression Ct. Conclusions of Law, 2/5/19, at 17.

The case proceeded to a jury trial where the Commonwealth established the aforementioned facts.[6] Additionally, the Commonwealth presented testimony from Trooper Luke Straniere, an expert in drug interdiction, who testified that, in his expert opinion, Appellant possessed the drugs found in the Jeep with the intent to deliver them.[7]

Appellant also testified at trial.[8] Relevantly, he testified that he had been driving the Jeep for 15 to 20 days before Trooper Hope stopped him. He testified that during that time, someone else had borrowed the Jeep and had been driving it for the five days before the traffic stop.[9]

_____

[6] The Commonwealth also presented the testimony of Trooper Hope's partner, Trooper Thomas Fleisher, Trooper Reed, and Jordan Tuttle, who had formerly been employed by the Pennsylvania State Police Forensic Services Unit.

[7] N.T. Trial, 4/3/19, at 285-304.

[8] Appellant also offered character testimony from his mother and the mother of his children.

[9] N.T. Trial, 4/3/19, at 454, 459.

Appellant also presented the testimony of Trooper Lugo. He testified that he recalled Appellant explaining that someone other than him had used the Jeep between 10 and 12 days before the traffic stop.[10]

On April 9, 2019, the jury convicted Appellant of the above offenses. On May 20, 2019, the court sentenced Appellant to an aggregate term of 3 to 10 years' incarceration. On May 29, 2019, Appellant filed a Post-Sentence Motion, which the court denied on June 3, 2019.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant has raised the following issues for our review:

1. Whether the [c]ourt erred by denying [Appellant's] Pre-Trial Motion to Suppress?

    a. Whether the [c]ourt erred by finding the traffic stop was supported by reasonable suspicion?

    b. Whether the [c]ourt erred in finding that the Trooper's search of the underside of the vehicle with the use of a flashlight did not constitute a search requiring probable cause and/or a warrant?

    c. Whether the [c]ourt erred in finding that [Appellant's] consent was valid?

2. Whether the evidence at trial was insufficient to prove [Appellant] guilty of all of the crimes of his conviction as the elements of intent were not made out?

3. Was the verdict against the weight of the evidence [insofar] as there was evidence of good character and no evidence that [Appellant] knew that the narcotics were secreted in the vehicle?

---

[10] N.T. Trial, 4/3/19 at 378-79.

- 6 -

Appellant's Brief at 9.

**Motion to Suppress**

In his first issue, Appellant challenges the denial of his Motion to Suppress. When we review the denial of a Motion to Suppress, "we are limited to considering only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Yorgey***, 188 A.3d 1190, 1198 (Pa. Super. 2018) (*en banc*) (citation and internal quotation marks omitted). When the testimony and other evidence support the trial court's findings of fact, this Court is bound by them and we "may reverse only if the court erred in reaching its legal conclusions based upon the facts." ***Id.*** (citation omitted).

We are highly deferential to the suppression court's factual findings and credibility determinations. ***Commonwealth v. Batista***, 219 A.3d 1199, 1206 (Pa. Super. 2019). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). If the record supports the suppression court's findings, we may not substitute our own findings. ***Bastista***, 219 A.3d at 1206. However, we give no deference to the suppression court's legal conclusions and review them *de novo*. ***Id.***

"The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." ***Commonwealth v.***

***Neal***, 151 A.3d 1068, 1071 (Pa. Super. 2016). Importantly, "[o]nce a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-48 (Pa. 2012) (citing Pa.R.Crim.P. 581(H)).

In support of his claim that the suppression court erred in denying his Motion to Suppress, Appellant advances four alternate arguments; we address them *seriatim*.

**Burden of Proof**

The trial court denied Appellant's Motion to Suppress because it found that Appellant did not have a reasonable expectation of privacy in the Jeep because he did not own it, it was not registered to him, and he did not provide any evidence that he had the authority to operate it. Suppression Ct. Conclusions of Law, 2/5/19, at 17. Appellant does not challenge this finding. Rather, in his first issue, Appellant asserts that the trial court improperly shifted the burden to establish that he had a reasonable expectation of privacy onto him. Appellant's Brief at 18-22. We conclude that Appellant waived this argument.[11]

_____

[11] Moreover, even if Appellant had not waived this issue, it would not garner him relief. The Commonwealth presented evidence at the Suppression Hearing that Appellant did not own the Jeep, that it was not registered to Appellant, and that Appellant did not offer the officers any proof that the Jeep's owner had authorized Appellant to operate it. The trial court properly relied on this evidence when it concluded that Appellant did not have a reasonable expectation of privacy in the Jeep.

Pa.R.A.P. 1925(b)(4)(ii) directs that an appellant's Concise Statement of Errors Complained of on Appeal shall "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issues to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). Further, a Rule 1925(b) Statement must be sufficiently specific so as to afford the trial court the ability to draft a meaningful opinion without resorting to speculation regarding what issues or arguments appellant wishes to present. *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001).

Our review of Appellant's Rule 1925(b) Statement indicates that Appellant claimed that the trial court erred in denying his Motion to Suppress and advanced numerous theories in support of this assertion, not one of which asserted that the trial court erred as a matter of law by shifting the burden of proving that Appellant had a reasonable expectation of privacy onto Appellant. *See* Rule 1925(b) Statement, 6/11/20, at 1-2. Because Appellant did not raise this claim with "sufficient detail to identify" it, Appellant has waived it. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

**Violation of the Motor Vehicle Code**

Next, Appellant claims that the trial court erred in finding that the Commonwealth established that Trooper Hope had a reasonable basis to conclude that Appellant's failure to signal when moving from the left lane of

traffic to the right lane of traffic violated the Motor Vehicle Code. Appellant's Brief at 23-26. Appellant avers, without citation to supporting authority, that he did not violate the Motor Vehicle Code by not using his signal when the lane in which he was travelling split into two lanes. He concludes that, because his conduct did not violate the Motor Vehicle Code, Trooper Hope did not have a reasonable basis to effectuate a traffic stop. *Id.*

"A police officer has the authority to stop a vehicle when he or she has a reasonable suspicion that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code." *Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013) (citing 75 Pa.C.S. § 6308(b)). However, "[f]or a stop based on [an] observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional stop." *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2018); *see also Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (same).

Police have probable cause "where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Brown*, 64 A.3d at 1105 (citation omitted). "We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis." *Id.* (citation omitted).

Section 3334 of the Motor Vehicle Code prohibits a driver from "mov[ing] from one traffic lane to another . . . without giving an appropriate signal[.]" 75 Pa.C.S. § 3334(a).

Here, Trooper Hope testified at the suppression hearing that he observed Appellant violate 75 Pa.C.S. § 3334 when Appellant's "vehicle was in the left lane" and he "moved [it] to the right lane and failed to use a turn signal." N.T. Suppression, 11/2/18, at 22. Appellant argues that Trooper Hope lacked probable cause to find a violation of Section 3334 because Appellant merely changed lanes when the lane in which he was driving split into two lanes. Appellant, however, provides no legal authority for such an exception to Section 3334, and Section 3334 does not create one. Rather, the clear and unambiguous language of Section 3334 requires the use of a turn signal when a driver is "moving" from one lane to another. Trooper Hope's testimony established that he reasonably believed that Appellant had violated Section 3334 by "moving" from one lane to the new lane. That the lane into which Appellant moved was new is irrelevant to the requirement that Appellant signal his lane change. Thus, Trooper Hope had probable cause to stop Appellant's vehicle.[12]

---

[12] The suppression court credited Trooper Hope's testimony that he believed Appellant had committed a violation of the Motor Vehicle Code. Suppression Ct. Findings of Fact, 2/5/19, at ¶¶ 6-7.

**Warrantless Search**

Third, Appellant asserts that Trooper Hope impermissibly "conducted a warrantless search when he got on the ground, crawled under the vehicle, and used a flashlight to inspect the underside of the vehicle." Appellant's Brief at 30. He contends that Trooper Hope did not have probable cause to perform the inspection of the exterior undercarriage of the Jeep. *Id.* at 30-31. He further asserts that the search performed by Trooper Hope "cannot be the kind reasonably believed to be in the public view." *Id.* at 31.

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). "The threshold question in any Fourth Amendment inquiry is whether the conduct of the police amounted to a search." *Commonwealth v. Smith*, 85 A.3d 530, 536 (Pa. Super. 2014) (citations, bracket, and ellipses omitted). "A search occurs when the government intrudes on an area where a person has a 'constitutionally protected reasonable expectation of privacy.'" *Commonwealth v. Robbins*, 647 A.2d 555, 558 (Pa. Super. 1994) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). "The examination of the exterior of an automobile is **not**, for purposes of the Fourth Amendment, a "search"; and generally a warrant therefor is not required." *Commonwealth v. Grabowski*, 452 A.2d 827, 831 (Pa. Super. 1982) (emphasis in original). *See also Cardwell v. Lewis*, 471 U.S. 583, 592 (1974) (explaining that "a

warrantless examination of the exterior of a car is not unreasonable under the Fourth [] Amendment[.]")

Trooper Hope testified that he "got on [his] back on the shoulder of the road and looked under the Jeep above the spare tire area[,]" using nothing more than his "naked eye,[ and] the aid of a flashlight."  N.T. Suppression Hr'g, 11/2/18, at 43, 45.  He testified, while narrating the dash camera video shown to the court, that he was under the Jeep for "[j]ust a few seconds." *Id.* at 45.  He affirmed that, while he may have touched the Jeep's bumper to balance himself, he did not "reach up and pull anything down or try to manipulate any part of the undercarriage of the vehicle[]" or physically attach anything to the underside of the Jeep.  *Id.*

Appellant has claimed that Pennsylvania law required Officer Hope to possess probable cause and obtain a warrant merely to examine visually the exterior of the undercarriage of the Jeep with a flashlight.  In support of this claim, Appellant relies exclusively on *U.S. v. Jones*, 565 U.S. 400, 404 (2012), where the Supreme Court held that the government's use of a GPS device attached to the defendant's car to monitor his car's movements without a valid warrant violated his Fourth Amendment rights.

*Jones* is factually and legally inapposite to the instant case.  Trooper Hope's brief observation of the exterior of the undercarriage of Appellant's vehicle is not analogous to the physical intrusion onto the *Jones* defendant's vehicle by a GPS tracking device and the attendant tracking of the vehicle's movements.  Moreover, Trooper Hope, while lawfully in a position underneath

Appellant's Jeep, viewed the false compartment with his naked eye and a flashlight and then obtained Appellant's consent to search the Jeep. Thus, *Jones* is inapplicable.

Furthermore, Appellant has overlooked that Trooper Hope's visual inspection of the exterior of the undercarriage of the Jeep did not constitute a "search" that would implicate the warrant requirements of the Fourth Amendment. *See Grabowski*, 452 A.2d at 831; *Cardwell*, 471 U.S. at 592. Because, Appellant did not have a constitutionally protected expectation of privacy in the exterior of the undercarriage of the Jeep, he is not entitled to relief on this claim.

**Validity of Appellant's Consent to Search**

Last, Appellant claims that his consent and waiver to search was not knowing, intelligent, and voluntary. Appellant's Brief at 32-39.

It is well-settled that a search conducted without a warrant is unreasonable and unconstitutional, unless an established exception to the warrant requirement applies. *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000). "One such exception is consent[.]" *Id.* "To establish a valid consensual search, the Commonwealth must first prove that the consent was given during a legal police interaction." *Commonwealth v. Bell*, 871 A.2d 267, 273 (Pa. Super. 2005). Next, the Commonwealth must prove the consent was given voluntarily. *Id.* In Pennsylvania, a person's consent to a warrantless search must be "unequivocal, specific, and voluntary." *Commonwealth v. Gibson*, 638 A.2d 203, 207 (Pa. 1994).

- 14 -

As noted, *supra*, the interaction between Trooper Hope and Appellant constituted a legal police interaction. Thus, we proceed to address whether Appellant gave his oral and written consent to search the Jeep voluntarily and knowingly.

**Written Consent**

Appellant advances numerous bald claims in support of his assertion that his written consent was involuntary. He claims that: (1) in order to be valid, a trooper must first complete in full all sections of the consent form; (2) a defendant's printed first name alone is insufficient to acknowledge consent; and (3) the Pennsylvania State Police consent form is not valid unless its Spanish translation accounts for variations among words and their meanings across all Spanish-speaking countries. Appellant's Brief at 36.

"[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (citations omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Id.*** If a deficient brief hinders this Court's ability to address any issue on review, we shall consider the issue waived. ***Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa. Super. 2006) (holding that the appellant waived his issue on appeal for failing to support his claim with relevant citations to case law and the record). ***See also In re R.D.***, 44 A.3d 657, 674 (Pa. Super. 2012) (finding waiver where the argument

portion of an appellant's brief lacked meaningful discussion of, or citation to, relevant legal authority).

Although Appellant has included in his Brief references to the record and citation to boilerplate case law pertaining generally to the legal principles relevant to consent and voluntariness,[13] Appellant has not provided this Court with citation to any case law supporting his individual bald claims. This omission has precluded this Court's meaningful review. ***Gould***, 912 A.2d at 873. Accordingly, we are constrained to conclude that Appellant has waived this claim.

**Oral Consent**

Appellant next claims that his oral consent to search was also involuntary because he does not speak English. Appellant's Brief at 38. In support of this claim Appellant, asserts that Trooper Hope's testimony that he "asked over and over" whether he could search the Jeep indicates that Appellant did not give unequivocal consent. ***Id.*** (citing ***Commonwealth v. Powell***, 994 A.2d 1096, 1103 (Pa. Super. 2010) (explaining that the fact that the officer sought confirmation or clarification of the defendant's initial response suggested that the defendant's first answer was not unequivocal)). ***See also*** Appellant's Brief at 36 (where Appellant claims that Trooper Hope "asked the same questions again and again[.]").

---

[13] Appellant's Brief at 32-35.

Appellant has not cited to the places in the Notes of Testimony that support his assertion that Trooper Hope "asked over and over" whether he could search the Jeep.

"We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument[.]" ***Commonwealth v. Cannavo***, 199 A.3d 1282, 1289 (Pa. Super. 2018). To do so would place this Court "in the conflicting roles of advocate and neutral arbiter." ***Commonwealth v. Williams***, 782 A.2d 517, 532 (Pa. 2001) (Castille, J., concurring). "[I]nstead, we will deem the issue to be waived." ***Cannavo***, 199 A.3d 1289 (brackets omitted). Appellant has, thus, waived this claim.

**Sufficiency of the Evidence**

In his second issue, Appellant claims that the Commonwealth failed to prove that he possessed the contraband in the Jeep's secret compartment. Appellant's Brief at 39-48. In particular, Appellant asserts that the Commonwealth did not prove that Appellant was aware of the Jeep's secret compartment or its contents, and notes the absence of evidence that he knew how to access the secret compartment. ***Id.*** at 39, 41-42, 47.

We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Melvin***, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). Further, a conviction may be sustained wholly on circumstantial

- 17 -

evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Id.* at 40. "Because evidentiary sufficiency is a matter of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Brooker*, 103 A.3d 325, 330 (Pa. Super. 2014) (citation omitted).

The jury convicted Appellant of drug offenses under the Controlled Substance, Drug, Device & Cosmetic Act, 35 P.S. § 780-101, *et seq*, each of which required the Commonwealth to prove that Appellant "possessed" the contraband. *See* 35 P.S. §§ 780-113(a)(16), (30), and (32). The Crimes Code defines the term "possession" as "an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." 18 Pa.C.S. § 301(c). Because possession is the only statutory element Appellant challenges, we address his three issues together.

### Constructive Possession

We have held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018) (citation omitted). Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. *Commonwealth v. Hopkins*, 67 A.3d

- 18 -

817, 820 (Pa. Super. 2013). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." *Id.* (citation omitted). "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control." *Id.* (citation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." *Id.* (citation omitted).

It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996) (citation omitted). *See*, *e.g.*, *Commonwealth v. Davis*, 743 A.2d 946, 953-54 (Pa. Super. 1999) (holding that evidence was sufficient to prove constructive possession over drugs found in common areas of an apartment where the defendant entered the apartment using his own key, possessed $800 in cash on his person, and police recovered defendant's identification badge, size appropriate clothing, and firearms from a bedroom). The Commonwealth can prove constructive possession if the defendant shared with another actor or actors equal access and joint control of an area where the drug or gun was located. *Commonwealth v. Mudrick*, 507 A.2d 1212, 1214 (Pa. 1986).

Here, the evidence presented at trial related to Appellant's constructive possession of contraband included the following: (1) Appellant was the driver and only person in the vehicle when Trooper Hope stopped it; (2) Appellant had access to the vehicle for approximately 15 days prior to the traffic stop;

(3) Appellant gave Troopers Hope and Lugo inconsistent responses to their questions about the Jeep's ownership, the identity of the person who permitted Appellant to drive it, and who else had access to it; (4) Appellant was coming from a high drug source area—Patterson, New Jersey—to a high drug destination—Reading, Pennsylvania; and (5) Appellant was evasive when answering questions about the friend he planned to visit in Reading, and whose contact information he had recently deleted from his cell phone. *See* N.T. Trial, 4/3/19, at 126-28, 187-88, 207, 212, 215-18, 294, 296-97, 304, 380-83, 427-34, 442-43, 452-54, 459. *See also* Appellant's Trial Exhibit 3, Transcript of Dash Cam Video in English/Spanish, 12/15/17.

Our review of the testimony and evidence presented at trial, viewed in its totality and in a light most favorable to the Commonwealth as verdict winner, reveals sufficient evidence from which a jury reasonably could have inferred that Appellant was acting as a courier for a narcotics trafficking organization and was aware of the drugs present in the Jeep's secret compartment. Further, it was reasonable for the jury to infer that a narcotics trafficker would not place drugs worth more than $200,000 in a vehicle subsequently driven out of state unless the driver of the vehicle was a witting participant. Thus, given the location of the narcotics, the bulk weight and value of the cocaine, and the changing and illogical story told by Appellant, the evidence was sufficient to support each of Appellant's convictions. Accordingly, Appellant is not entitled to relief on this claim.

**Weight of the Evidence**

In his final issue, Appellant claims that the verdict was against the weight of the evidence. Appellant's Brief at 48-55. Appellant essentially argues that the jury should have credited the testimony of Appellant and his character witnesses over that of the Commonwealth's witnesses.[14] *Id.* at 53-55.

A defendant must preserve his claim that the jury's verdict was against the weight of the evidence by, *inter alia*, raising it in a post-sentence motion. Pa.R.Crim.P. 607. "Failure to properly preserve the claim will result in waiver[.]" *Commonwealth v. Rivera*, 238 A.3d 482, 497 (Pa. Super. 2020) (citation omitted).

"[A] post-verdict motion, either that 'the evidence was insufficient to support the verdict,' or that 'the verdict was against the weight of the evidence,' will preserve **no** issue for appellate review unless the motion goes on to specify in **what respect** the evidence was insufficient or **why** the verdict was against the weight of the evidence." *Id.* (quoting *Commonwealth v. Holmes*, 461 A.2d 1268, 1270 (Pa. Super. 1983) (*en banc*) (emphasis in original).

Instantly, Appellant filed a Post-Sentence Motion in which he asserted, *inter alia*, that "[t]he jury verdict was against the weight of the evidence."

---

[14] Appellant also reasserts his claim that the Commonwealth's evidence did not support the jury's finding that Appellant possessed the drugs found in the Jeep. Appellant's Brief at 51-53. We addressed this claim *supra*, and found that it lacked merit.

Post-Sentence Motion, 5/29/19, at ¶ 7. Appellant did not specify in the Motion in what respect the evidence was insufficient or why the verdict was against the weight of the evidence. Accordingly, Appellant has not properly preserved this claim for our review.[15]

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/2020

---

[15] The trial court likewise concluded that Appellant had waived this claim for failing to raise it with sufficient specificity. **See** Trial Ct. Op., 6/10/20, at 24-25.