J-S33036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE CLASSEN | : | |
| | : | |
| Appellant | : | No. 1829 EDA 2020 |

Appeal from the Judgment of Sentence Entered July 29, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004537-2018

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JANUARY 11, 2022**

Jose Classen appeals from the judgment of sentence imposed following

his conviction for Criminal Conspiracy, 18 Pa.C.S.A. § 903. Classen argues

that the trial court erred in denying his motion to suppress evidence, motion

*in limine*, and post-sentence motions. We affirm.

The trial court set forth the facts of this case as follows.

> In June of 2017, Raul Maldonado was approached by his
> neighbor, [Jose Classen], who had been his next-door
> neighbor on the 3900 block of Franklin Street in North
> Philadelphia for the preceding two months. [Classen] was
> not eligible to carry or own a firearm due to previous felony
> convictions, but nonetheless wanted to purchase a
> handgun. [Classen] convinced Maldonado to accompany
> him to Frank's Gun Shop at 4730 Blakiston Street in
> Northeast Philadelphia on June 16, 2017. There, [Classen]
> provided money for Maldonado to purchase both a Glock and
> Taurus handgun, provided that Maldonado complete each
> application and register each firearm in his name. In
> exchange for completing the purchase and registering each

firearm, [Classen] permitted Maldonado to keep the Taurus firearm while [Classen] kept the Glock for himself.

A couple of weeks after the purchase, Maldonado had misgivings about maintaining the agreement for [Classen] to keep the Glock registered in Maldonado's name, and he asked [Classen] to transfer the weapon to someone else. [Classen] agreed on the condition that Maldonado give him the Taurus he had also purchased. Then [Classen] and Maldonado, together with [Classen]'s wife Miriam Classen, returned to Frank's Gun Shop, where Maldonado formally transferred ownership of the Glock to Miriam Classen.

Now feeling apprehensive about [Classen] possessing the Taurus that was registered in his name, Maldonado again approached [Classen] about transferring formal ownership of the firearm, upon which [Classen] suggested that Maldonado report the Taurus as stolen. After that conversation, Maldonado directed his mother, Cynthia Rivera, to call the police to report a burglary.

On August 11, 2017, Philadelphia Police Detective Matthew Dydak responded to the Maldonados' reported burglary, and at the home, Maldonado claimed that his firearm was stolen, while Rivera reported that her jewelry was missing. After a half-hour search, Dydak did not discover any signs of forced entry consistent with a burglary. Dydak escorted Maldonado and Rivera to the East Detectives division for an interview. Midway trough the interview, Maldonado indicated that his burglary report was false, so Dydak stopped the interview, gave Maldonado *Miranda* warnings, and took a video-recorded formal statement.

During his statement, Maldonado revealed that he falsely reported the burglary because he felt uncomfortable having a firearm registered to his name in [Classen]'s possession. He identified [Classen] via photograph and described how [Classen] approached him and they went to Frank's Gun Shop and purchased both the Glock and Taurus firearms. Based on this information, investigators obtained a search warrant for [Classen]'s residence at 3906 North Franklin Street.

At 12:30 a.m. on August 12, 2017, Dydak and other investigators served the warrant at 3906 North Franklin Street. Inside the home, investigators discovered gun cases

for two firearms, a Glock handgun Serial Number AAYW 228, and another Glock handgun Serial Number BCYN 370, with associated paperwork. Investigators did not recover any firearms from the property, but discovered mail addressed to [Classen] and a marriage certificate between himself and his wife Miriam Classen.

On April 12, 2018, Agent Mark Schmidheiser of the Pennsylvania Attorney General Gun Violence Task Force executed an arrest warrant for [Classen] at 3906 Franklin Street. Upon arrest, [Classen] told Schmidheiser that two weapons, belonging to his wife, were in the property. Agents quickly secured a search warrant for the property, and recovered two firearms, the BCYN 370 Glock, a 9mm handgun Serial Number 580475, and [] a pellet gun. Agents cross referenced this serial number with a Federal Firearms Transaction Record obtained from Frank's Gun Shop, which listed both a Taurus PT 111 9mm Serial Number JY 57294 and the Glock 20 Serial Number BCYN 370 as having been purchased by Maldonado. The Taurus firearm was never recovered.

Investigators obtained DNA samples from both [Classen] and the BCYN 370 Glock and submitted them to the Office of Forensic Science of the Philadelphia Police Department for analysis. Brittney Rehrig, a forensic scientist with the office compared [Classen]'s reference sample with those obtained from the firearm and prepared a report. Two samples, obtained from the left and right sides of the BCYN 370 Glock, were consistent with a mixture originating from two individuals, with [Classen]'s DNA serving as a partial major component of the right-side sample, and a major component of the left side sample. Rehrig made her conclusions to a reasonable degree of scientific certainty.

Trial Ct. Op., filed 2/12/21, at 2-5 (citations to the record omitted).

Classen filed a motion to suppress a concealed carry handgun permit that bore his name and address, contending that the information in the affidavits were "the words of person or persons whom [sic] admittedly lied to police and without any other corroboration whatsoever that [Classen] was

responsible for any criminal activity." **See** Mot. To Suppress, 1/13/19, at 1-2. At the suppression hearing, the court asked Classen to clarify the grounds for the motion, as it had been "pretty boilerplate" and did not attach a copy of the challenged warrant. N.T., 3/18/19, at 10-11. Although Classen presented no evidence, at the hearing Classen presented the motion as a **Franks**[1] motion. Classen argued that the search warrant had been based upon lies by Maldonado and Rivera, specifically, that the house had been burglarized. **Id.** at 4-5. Classen did not present witnesses or ask to do so.

The Commonwealth responded that Classen had not made a substantial preliminary showing that the false statement was knowing and intentional or with reckless disregard to the truth. **Id.** at 6. The Commonwealth noted that while Maldonado and Rivera had initially lied, it quickly became clear to investigators that they had done so; they admitted their lies, and additional investigation was conducted through record checks. **Id.** at 7-8. The prosecutor pointed out that all this information had been presented to the magistrate issuing the warrant. **Id.**

The court held the matter under advisement so that counsel could provide copies of the search warrant and a letter brief. **Id.** at 11-12. Both parties submitted briefs. In his brief, Classen argued for the first time that there were false statements in the affidavit; that the affidavit improperly mentioned that Miriam Classen had two guns registered in her name; and that

_____

[1] **Franks v. Delaware**, 438 U.S. 154 (1978).

the affidavit made a material omission by failing to note that the Glock purchased by Maldonado was later transferred to Classen. The court formally denied the motion on January 7, 2020. N.T., 1/7/20, at 6-7.

On January 8, 2020, the court held a jury trial; on January 13, 2020, the jury found Classen guilty of conspiracy to provide false information and not guilty of one count each of 18 Pa.C.S.A. § 6105 and § 6111(g)(2). The jury could not reach a verdict on the remaining charges. On July 29, 2020, the court sentenced Classen to three and a half to seven years of incarceration. Classen filed a post-sentence motion, which the court denied. Classen timely appealed.

Classen presents the following issues on appeal:

> 1. Did the [motion court] err in denying [Classen's] motion to suppress physical evidence obtained from the August 11, 2017 search warrant?
>
> 2. Did the [trial court] abuse its discretion in denying [Classen's] motion *in limine* to preclude the Commonwealth's DNA expert testimony?
>
> 3. Did the [trial court] abuse its discretion in denying [Classen's] post-sentence motions challenging the weight of the evidence presented to the jury when it convicted [Classen] of conspiring to provide false information in connection with the purchase of a firearm contrary to 18 Pa.C.S.A. § 6111(g)(4) and in violation of 18 Pa.C.S.A. § 903?

Classen's Br. at 3 (unnecessary capitalization omitted).

Classen first challenges the court's denial of his motion to suppress. Our standard of review of the denial of a suppression motion requires us to

determine whether the record supports the trial court's factual findings and legal conclusions. **Commonwealth v. Knox**, 219 A.3d 186, 193 (Pa.Super. 2019), *appeal denied*, 228 A.3d 256 (Pa. 2020). Where, as here, the Commonwealth prevailed on the suppression motion, we consider only the Commonwealth's evidence and "so much of the evidence for the defense as remains uncontradicted when read in context of the record as a whole." **Id.** (quoting **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010)). We reverse only if the record does not support the trial court's factual findings, or the court's legal conclusions are erroneous. **Id.**

In **Franks**, the United States Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

**Franks**, 438 U.S. at 155–56. "[A] court must invalidate an affidavit of probable cause where the *sole* basis for the finding of probable cause is material misstatements." **Commonwealth v. Batista**, 219 A.3d 1199, 1206 (Pa.Super. 2019) (citation omitted). A reviewing court does not err in rejecting a challenge where the defendant fails to offer evidence that the affiant made

false statements deliberately or with a reckless disregard for the truth. *Id.* at 1207.

In the instant case, Classen's arguments are predicated on the following facts: Maldonado lied to the police about the burglary, and that the warrant omitted information regarding Rivera's false police report. As noted above, no testimony or evidence was introduced beyond the affidavit itself. However, Classen's arguments are unavailing.

Regardless of who initiated the report of the burglary, both Rivera and Maldonado admitted that they had lied about the burglary. Indeed, the affidavit clearly indicated that Maldonado had lied and that the lie was the foundation of the investigation. The fact that the affidavit did not specifically indicate that Rivera had lied as well did not rise to the level of a material misstatement. *Batista*, 219 A.3d at 1206-07. Maldonado and Rivera's statements to police were further supported by record searches, revealing that two guns were registered to Classen's wife, and that Classen had a felony conviction. The affidavit's mention of Mrs. Classen's gun ownership and the transfer of the Glock firearm from Mrs. Classen to Classen was a plain statement of the facts of a straw purchase case. No relief is due.

Classen next argues that the court erred in denying his motion to preclude the Commonwealth's DNA expert from testifying regarding "touch-DNA" using short tandem repeats ("STR") software, a type of probabilistic genotyping software. Classen's Br. at 16. He additionally argues the report was unreliable and misleading to the jury. *Id.* Classen cites *United States v.*

*Gissantaner*, 417 F.Supp.3d 857 (W.D. Mich. 2019), *rev'd*, 990 F.3d 457 (6th Cir. 2021) in support of his argument that probabilistic genotyping software was not sufficiently reliable and that there was no evidence the test itself was generally accepted in the scientific community. *Id.* at 19-20.

The trial court has discretion in deciding whether to admit expert testimony over an objection. *See Commonwealth v. Ventura*, 975 A.2d 1128, 1140 (Pa.Super. 2009). Such a decision will be reversed only if the appellate court finds an abuse of discretion or an error of law. *See id.*; *Commonwealth v. Foley*, 38 A.3d 882, 887 (Pa.Super. 2012).

A witness may provide expert opinion testimony based upon knowledge, skill, training, experience, or education if the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson, and the testimony will help the trier of fact understand the evidence or to determine a fact in issue. The expert's methodology must be generally accepted in the relevant field. Pa.R.E. 702.

> Pennsylvania continues to adhere to the *Frye* test, which provides that "novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community." *Betz v. Pneumo Abex LLC*, 998 A.2d 962, 972 (Pa.Super. 2010) (*en banc*) (citing *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038 (2003)). The *Frye* test is a two-step process. *See id.* First, the party opposing the evidence must show that the scientific evidence is "novel" by demonstrating "that there is a legitimate dispute regarding the reliability of the expert's conclusions." *Id.* If the moving party has identified novel scientific evidence, then the proponent of the scientific evidence must show that "the expert's methodology has general acceptance in the relevant scientific community"

despite the legitimate dispute. *Id.* (internal quotation marks omitted).

*Foley*, 38 A.3d at 888.

A *Frye* hearing is warranted only where the trial court has articulable grounds to believe an expert witness has not applied accepted scientific methodology. *See Commonwealth v. Bonnett*, 239 A.3d 1096, 1102 (Pa.Super. 2020). The opposing party must demonstrate that the testimony is based on novel scientific evidence and that a legitimate dispute regarding the reliability of the conclusions exists. *Id.*

Classen did not file a written motion seeking a *Frye* hearing. Instead, he made his objection to the introduction of the evidence, with citation to *Gissantaner*, on the record on the first day of trial. N.T., 1/8/20, at 186-92. However, *Gissantaner* is not binding on Pennsylvania state courts, was reversed by the Sixth Circuit, and relied upon the *Daubert* standard, which has not been adopted in Pennsylvania. *See Grady,* 839 A.2d at 1044. Accordingly, it is inapposite to the case at hand.

The trial court further observed

> Indeed, [Classen] did not provide any additional evidence, such as an expert's report challenging the Commonwealth's findings, that could be used to sway this [c]ourt's opinion. [Classen] failed to memorialize his challenge to the admission of such evidence in the form of a written motion filed in advance of trial, but rather presented his challenge on the morning of jury selection. That challenge was insufficient to establish that the DNA test in question was a novel scientific approach, or that it was subject to legitimate dispute within the scientific community. His citation to the Michigan District Court's *Gissantaner* holding, which was based on a non-binding analysis of the *Daubert* standard,

- 9 -

> was of little value in demonstrating dispute or novelty under ***Frye***.
>
> While [Classen], in theory, could develop his ***Frye*** claim in the form of expert testimony or additional evidence of novelty, he declined to further supplement his argument, or even request a formal ***Frye*** hearing . . . [Classen] was still permitted to challenge the reliability of both the expert and her conclusions on both *voir dire* and cross-examination.

Trial Ct. Op. at 9.

Classen is not entitled to relief on this issue. The court properly denied his motion.

Finally, Classen argues that the verdict for Conspiracy was against the weight of the evidence and the court erred in denying his post-sentence motion because the evidence was not credible, as Maldonado and Rivera's initial lies to the police rendered the testimony incredible. Classen's Br. at 22-23. He also contended that the jury's not guilty verdicts for various other gun offenses rendered his conviction for Conspiracy a legal impossibility, because he was found not guilty of possessing the firearm he was convicted of conspiring to purchase. ***Id.***

A weight claim is for the trial court in the first instance. ***See Commonwealth v. Stiles***, 143 A.3d 968, 980 (Pa.Super. 2016). The trial court may sustain a weight challenge and grant a new trial only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). "The weight of the evidence is exclusively for the

finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003) (quoting ***Commonwealth v. Small***, 741 A.2d 666, 672 (Pa. 1999)). We review the trial court's rejection of a challenge to the weight of the evidence for an abuse of discretion. ***See Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa.Super. 2017).

In the instant case, counsel cross-examined Maldonado regarding his previous lies to the police and his testimony. N.T., 1/8/20, at 272-335. The jury was free to believe all, part, or none of his testimony; the jury believed the testimony, as was within its purview as factfinder and the verdict does not shock the conscience. ***Commonwealth v. Page***, 59 A.3d 1118, 1130 (Pa.Super. 2013); ***Commonwealth v. Bozic***, 997 A.2d 1211, 1222 (Pa.Super. 2010).

With regard to Classen's remaining weight argument, the trial court observed:

> [Classen] characterizes these acquittals as pertaining to the Glock handgun, which he argues is inconsistent with the Conspiracy to Make a Material False or Written Statement in Connection with the Purchase, Delivery, or Transfer of a Firearm, as [Classen] was acquitted of possessing the firearm he allegedly conspired to possess.
>
> [Classen] is mistaken. The jury rendered not guilty verdicts to charges concerning [Classen]'s facilitation of transfer and possession of the Taurus handgun. On January 8, 2021, [Classen] pled guilty to the remaining VUFA 6105 and VUFA 6111 charges relating to the Glock handgun, rendering the instant argument moot. Moreover, as discussed *supra*, the Commonwealth was not required to demonstrate actual possession or transfer of the Glock firearm to prove

- 11 -

> Conspiracy beyond a reasonable doubt, but instead establish that [Classen] made [an] agreement to commit those acts and took an overt act in furtherance of completing those acts. The jury credited Maldonado's testimony to that effect, to no shock to this [c]ourt's conscience.

Trial Ct. Op. at 13. We perceive no abuse of discretion. **Clay**, 64 A.3d at 1054.

Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Bowes joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2022