J-S43013-22 and J-S43014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IRVIN HAWKINS | : | |
| | : | |
| Appellant | : | No. 38 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 9, 2021
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0000979-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IRVIN HAWKINS | : | |
| | : | |
| Appellant | : | No. 39 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 9, 2021
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001494-2019

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.: **FILED JANUARY 11, 2023**

Appellant, Irvin Hawkins, appeals from the Judgment of Sentence imposed after a jury convicted him of several counts of Possession with Intent to Deliver a Controlled Substance (heroin/fentanyl) ("PWID") and Conspiracy. He challenges the denial of his Motion to Suppress, the sufficiency of the evidence supporting his convictions, and the application of an Offense Gravity Score ("OGS") of nine.

- 1 -

**A.**

We glean the factual and procedural history from the trial court's detailed Pa.R.A.P. 1925(a) Opinion, which is supported by the record.[1] Chester County and City of Coatesville detectives conducted extensive surveillance of a house in Coatesville that Appellant leased, as well as cars that Appellant and others drove. In February 2019, the detectives began working with a Confidential Informant ("CI").

On February 1, 2019, the CI met with Detective Kristin Lund of the Chester County Drug and Organized Crime Unit and then contacted Appellant (a/k/a "Gotti") to purchase heroin. Appellant instructed the CI to go to the Wawa in Parkesburg for the transaction. Meanwhile, Detective Joseph Nangle observed Appellant exit the front passenger seat of a gold Mercury vehicle parked in front of Appellant's Coatesville house, enter the house, and return a short time later to the front passenger seat of the Mercury. The driver of the Mercury then drove Appellant to the Wawa.

Detective Thomas Hyland, working undercover, drove the CI to the Wawa. The driver of the Mercury then entered the backseat of the undercover vehicle while Appellant remained in the Mercury. Detective Hyland observed the CI give the driver $100 in marked bills in exchange for 12 small blue wax paper baggies containing heroin/fentanyl mix. After the Mercury driver returned to his vehicle, Detective Jonathan Shave observed Appellant, whom

---

[1] *See* Tr. Ct. Op., dated May 5, 2022, at 1-12.

he recognized as "Gotti," exit the Mercury, go into the Wawa briefly, then enter another vehicle for a few seconds, before returning to the front passenger seat of the Mercury.[2]

On February 4, 2019, after meeting with Detective Lund again, the CI contacted Appellant by calling a cell phone ending in "8057" to purchase more heroin. Appellant directed the CI to meet him at the Dollar General store in Valley Township. Detective Hyland again drove the CI to the meeting place. Meanwhile, Detective Nangle observed Appellant leave the Coatesville house and drive away in his Buick, returning shortly thereafter, and entering the house. Another individual then exited the house and drove a green Audi to the Dollar General store.[3] Once there, the driver of the Audi waved the CI over to the vehicle and the CI entered the front seat. Detective Hyland watched as the CI purchased from the Audi's driver another twelve baggies containing heroin/fentanyl mix.

The packaging from this sale was identical to the packaging of the heroin/fentanyl mix that the CI had purchased three days earlier. Later testing revealed that each batch contained the same unique chemical composition of heroin and fentanyl.

Following the two controlled buys, detectives obtained a search warrant for Appellant's Coatesville house. On February 8, 2019, at 6:03 A.M., the

_____

[2] N.T. Trial, 3/9/21, at 14.

[3] Two different drivers were involved in these transactions.

Chester County Regional Emergency Response Team ("CERT"), including Detective Sergeant Jeremy Rubincan, Detective Paul Trautman and Police Officer Paul Kemme, executed the search warrant.

Once inside Appellant's home, the officers had to breach a locked bathroom door. The officers then found Appellant hunched over the toilet where his hands were wet and hovering above the toilet. Behind a shower curtain next to Appellant, Officer Nangle found cocaine and heroin/fentanyl mixture in the bathtub. Officer Nangle also found drug paraphernalia in the kitchen, including blue wax baggies matching those obtained in the two controlled buys, and other smaller baggies stamped with the word "Apple" or with a picture of an apple.

In addition, officers found fourteen cell phones in the house, including the phone ending in "8057." Four of the cell phones contained Appellant's personal information and his personal photographs.[4] Text conversations retrieved from the phones indicated that Appellant identified himself as "Gotti" in text messages.

The officers also found in different rooms of Appellant's house three other men and five women. In each of their rooms, officers found "different

_____

[4] Officers were unable, however, to access the information on the device ending in "8057." Tr. Ct. Op. at 9.

- 4 -

quantities of money, different quantities of drugs, and different types of paraphernalia."[5]

The Commonwealth arrested and charged Appellant under two different docket numbers with twenty-two offenses, including PWID, conspiracy, and the criminal use of a communication facility.

**B.**

Appellant filed a pre-trial motion seeking suppression of the evidence obtained from the house based on an allegation that officers executed the search warrant before 6:00 A.M.[6]

The court held a hearing on Appellant's pre-trial motions on November 18, 2020, and March 8, 2021. CERT Officer Matt Williams testified that he used his cellphone and wristwatch to confirm the time of the search, stating that CERT did not leave the nearby staging area until 6:00 A.M. and that

---

[5] N.T. Trial, 3/9/21, at 237.

[6] Appellant also filed a Motion for Discovery seeking the metadata recorded from the helmet cameras officers used during the execution of the search warrant. The court denied the motion, noting that pursuant to police department policies in place in February 2019, the metadata was erased after the images/videos were converted to a Windows compatible format. The court further noted that it found credible testimony that the images and sound retained in the Windows format are identical to those in the original metadata recording. Finally, the court observed that the deletion of the original recording goes to the weight, not the admissibility, of the recordings. Order, dated 3/9/21, at n.2.

officers executed the search warrant at 6:03 A.M.[7] Detective Trautman testified that the officers went into the home after 6:00 A.M. Time-stamped video from body camera footage presented at the suppression hearing confirmed that officers executed the warrant at approximately 6:03 A.M. The trial court denied the suppression motion.

## C.

On March 9, 2021, the matter proceeded to a consolidated jury trial at which the investigating police officers and detectives testified to the above facts. In addition, Detective Sgt. Rubincan, supervisor of the Chester County Drug and Organized Crime Unit, testified as an expert.[8] He testified that the heroin/fentanyl mixture found in the bathroom of Appellant's house matched the composition of the mixture sold to the CI on February 1 and 4, 2019. Also, the packaging of the heroin/fentanyl mix from the controlled buys was identical to the packaging of the heroin/fentanyl the officers found in Appellant's bathroom and kitchen.

Detective Sgt. Rubincan also concluded that the quantity of the cocaine and the heroin/fentanyl found in the bathroom was too great to be for Appellant's personal use.

Finally, Detective Sgt. Rubincan testified that he reviewed Appellant's bank statements and Xfinity customer information and concluded that

---

[7] N.T. Suppression, 3/8/21, at 23.

[8] *See* N.T. Trial, 3/9/21, at 197-214.

Appellant had two other residences. This conduct, of having multiple residences, is a common practice that dealers in charge of drug enterprises use to facilitate drug trafficking and avoid criminal prosecution. He also testified that drug traffickers often use multiple cell phones, "flop houses" or "trap houses" where groups of people live and work to facilitate the drug trafficking enterprise. Drug traffickers also use "runners" to conduct the hand-to-hand transactions.

The jury found Appellant guilty of four counts of PWID, 35 P.S. § 780-113(a)(30), and two counts of Conspiracy, 18 Pa.C.S. 903.[9] On July 9, 2021, the court sentenced Appellant to an aggregate term of six to twelve years' incarceration.[10] Appellant filed post-sentence motions, which the trial court denied on December 9, 2021. Appellant filed a notice of appeal on December 21, 2021. Both Appellant and the court complied with Pa.R.A.P. 1925.

**D.**

Appellant raises the following issues for our review, consolidated and ordered for ease of disposition:

---

[9] The jury found Appellant not guilty of two counts of Criminal Use of a Communication Facility, and the Commonwealth withdrew all remaining charged offenses.

[10] Specifically, at docket CP-15-CR-0001494-2019, the court sentenced Appellant to two to four years' incarceration on each PWID conviction, to be served consecutively. The court imposed concurrent terms of two to four years' incarceration on each of the conspiracy convictions. At docket CP-15-CR-0000979-2019, the court sentenced Appellant to two to four years' incarceration on each PWID conviction to be served concurrently with one another, but consecutive to the sentences imposed at docket no. 1494-2019.

1. Did the lower court err in failing to make findings of fact and conclusions of law [ ] before ruling on [Appellant's] suppression motion?

2. Did the lower court err in denying [Appellant's] motion to suppress evidence seized pursuant to a search warrant which authorized a search between 6:00 a.m. and 10:00 p.m., when the Commonwealth could not corroborate its witness's testimony that the warrant was executed after 6:00 a.m. because the police destroyed the metadata of their video recordings of the search?

3. Was the evidence sufficient to prove beyond a reasonable doubt that [Appellant] conspired to deliver fentanyl to a confidential informant on February 1 and February 4, 2019?

4. Was there insufficient evidence to prove beyond a reasonable doubt that [Appellant] constructively possessed the cocaine and fentanyl with the intent to deliver, when other people had greater access and control over the drugs and the amount was consistent with personal use?

5. Did the lower court abuse its discretion and impose an excessive sentence when it applied an offense gravity score of nine for delivery of less than one gram of fentanyl?

Appellant's Brief (38 EDA 2022) ("Appellant's Br. 1") at 4-5; Appellant's Brief (39 EDA 2022) ("Appellant's Br. 2") at 5-6.

**E.**

Appellant's first two issues challenge the trial court's denial of his Motion to Suppress. Our review of a grant of a suppression motion is limited to determining "whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Carmenates***, 266 A.3d 1117, at 1122-23 (Pa. Super. 2021) (*en banc*) (citation omitted). "We may only consider evidence presented

at the suppression hearing." *Id.* at 1123 (citation omitted). Additionally, because the Commonwealth prevailed on this issue before the suppression court, we consider only the Commonwealth's evidence and so much of the defendant's evidence as remains uncontradicted when read in the context of the suppression record as a whole. *Id.*

This Court is highly deferential to the suppression court's factual findings and credibility determinations. *Commonwealth v. Batista*, 219 A.3d 1199, 1206 (Pa. Super. 2019). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (internal citation omitted). If the record supports the suppression court's findings, we may not substitute our own findings. *Bastista*, 219 A.3d at 1206. However, we give no such deference to the suppression court's legal conclusions and, instead, review them *de novo*. *Id.* Once a defendant files a Motion to Suppress, "it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047–48 (Pa. 2012) (citation omitted); *see also* Pa.R.Crim.P. 581(H).

\*\*\*

In his first issue, Appellant contends that the suppression court erred by failing to state its findings of fact and conclusions of law on the record at the

- 9 -

conclusion of the hearing, as required by Pa.R.Crim.P. 581(I). Appellant's Br. 1 at 14-15. His lone argument, without citation to relevant case law, is that this Court "is therefore precluded from its appellate function of determining whether the record supports the trial court's factual findings and whether the legal conclusions drawn are correct." *Id*. at 15. He acknowledges, however, that this Court may conduct its review based on the trial court's discussion of its findings of fact in its Rule 1925(a) Opinion. *Id*. (citing ***Commonwealth v. Reppert***, 814 A.2d 1196, 1200 (Pa. Super. 2002) (*en banc*)).

Appellant did not raise this claim of suppression court error in his Pa.R.A.P. 1925(b) Statement. Pursuant to our Rules of Appellate Procedure, Appellant, thus, failed to preserve this issue for appellate review. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."). As a result, Appellant waived this claim of error.[11]

**\*\*\***

In his second issue, Appellant contends that the Commonwealth failed to prove that the police properly executed the search warrant after 6:00 A.M.

---

[11] Moreover, Appellant's argument that this Court is not able to conduct appellate review without the suppression court's record statement of its findings of fact is meritless. In its Rule 1925(a) Opinion, the trial court provided its findings in detail and explained why it denied Appellant's suppression motion. This Court was, thus, able to review the record pursuant to our standard of review and conclude that the record supports the court's findings. ***See, e.g., Reppert***, 814 A.2d at 1200 (reversing denial of suppression motion by addressing the findings of fact that the suppression court detailed in its Rule 1925(a) Opinion, notwithstanding lack of suppression court's statement of findings on the record). Thus, Appellant's claim of error, even if preserved, would garner no relief.

Appellant's Br. 1 at 15. He acknowledges, however, that one of the body camera video recordings had a time stamp of 6:02:03 A.M., but avers that "those things could be manually manipulated" so the actual time of the execution could only be proven with the "metadata" from the recordings. *Id*. at 16. He argues that because the Commonwealth could not produce the metadata, the evidence that was presented at the suppression hearing failed to prove that the police properly executed the warrant after 6:00 A.M. *Id*. at 15-16. Appellant nonetheless acknowledges that a deviation from the time parameters set forth in the warrant "is technical" and unless the defendant shows disadvantage, "the error does not require suppression." *Id*. at 16. Appellant does not argue that he suffered a disadvantage arising from the alleged untimely service of the search warrant.

"Pursuant to the so-called exclusionary rule, 'evidence discovered as a result of a search that violates the fundamental constitutional guarantees of Article I, Section 8 will be suppressed.'" *Commonwealth v. Ruey*, 892 A.2d 802, 808 (Pa. 2006) (citation and emphasis omitted). The courts, however, distinguish between constitutional violations and mere technical violations of search warrants:

> Thus, it is important to distinguish between a violation of the fundamental constitutional guarantees of Article I, Section 8 and mere technical noncompliance with the Pennsylvania Rules of Criminal Procedure. We have, in fact, specifically "rejected the automatic application of the exclusionary rule to suppress evidence seized pursuant to a search which in some way violates the Pennsylvania Rules of Criminal Procedure relating to the issuance and execution of search warrants."

- 11 -

*Id.* (citation omitted).

Here, Appellant is not challenging on constitutional grounds the legal basis for the issuance of the search warrant or the manner of the search, nor is he alleging that the search warrant was lacking any technical requirements. *See* Pa.R.Crim.P. 205 (regarding contents of search warrant); Pa.R.Crim.P. 206 (regarding contents of application for a search warrant). Rather, he challenges only the suppression court's finding that the police executed the search warrant after 6:00 A.M.

The trial court addressed Appellant's claim in its Rule 1925(a) Opinion as follows:

> Looking at the record made at the suppression hearing, we continue to find that the Commonwealth met its burden to show that the police officers did not attempt to enter the [Coatesville] house prior to 6:00 a.m.
>
> The Commonwealth presented the testimony of Officer Matt Williams, the Commander of the Chester County Regional Emergency Response Team[.] He testified that he was present when his team executed the warrant and it was his role to oversee the operation on February 8, 2019, including the timing of the entry. He testified that he used his cell phone and watch to confirm the time prior to giving the command to proceed. The CERT team did not approach the [Coatesville] house until he gave his command at 6:03 a.m. (N.T., 11/18/2020, [at] 11-14). We found this testimony credible and persuasive. Further, at the suppression hearing, the Commonwealth's witness explained that the loss of the metadata was the result of the conversion process in place at the time, not any malfeasance on the part of law enforcement or the Commonwealth. No contradictory evidence was provided by Appellant.

Tr. Ct. Op.. at 15.

Our review of the record supports the court's finding that the police officers executed the warrant after 6:00 A.M. There is nothing in the record contradicting that finding. In addition, the suppression court found Officer Williams' testimony credible and, as noted above, credibility determinations are within the sole province of the suppression court. **Elmobdy**, 823 A.2d at 183. Accordingly, Appellant's second issue garners no relief.

**F.**

Appellant's next two issues challenge the sufficiency of the evidence supporting his PWID and conspiracy convictions. Our review of challenges to the sufficiency of the evidence is well-settled. "A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017) (citation and quotation marks omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." **Id.** "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." **Id.**

***

Appellant first challenges the sufficiency of the evidence supporting PWID convictions for the drugs found in the bathtub. *See* Appellant's Br. 1 at 17-18. He contends that "eight other people arguably had access to the drugs" found in the bathtub and opines that "one could be in the bathroom and not be aware the drugs were there." *Id.* at 18. He asserts that "[h]ad he known that the drugs were in the tub, he would have been trying to dispose of them, yet there was no evidence that the police heard the toilet flush as they entered." *Id.* He concludes that the totality of the circumstances here supports the conclusion that it is just as likely that Appellant did not know the drugs were in the bathtub. *Id.* at 18-19.

In order the establish the elements of the charge of PWID, the Commonwealth must present evidence that a defendant possessed a controlled substance with the intent to deliver it. 35 P.S. § 780-113(a)(30); ***Commonwealth v. Lee***, 956 A.2d 1024, 1028 (Pa. Super. 2008). If the contraband is not found on the defendant's person, the Commonwealth must prove that the defendant had constructive possession of the contraband, *i.e.*, the "ability and intent to exercise control or dominion over the substance." ***Commonwealth v. Hutchinson***, 947 A.2d 800, 806 (Pa. Super. 2008). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." ***Commonwealth v. Brown***, 48 A.3d 426, 430 (Pa. Super. 2012)

(citation omitted). The Commonwealth may establish constructive possession through the totality of the circumstances. *Commonwealth v. Muniz*, 5 A.3d 345, 349 (Pa. Super. 2010).

"For the Commonwealth to prove constructive possession where more than one person has access to the contraband, the Commonwealth must introduce evidence demonstrating either the defendant's participation in the drug-related activity or evidence connecting the defendant to the specific room or areas where the drugs were kept." *Commonwealth v. Hall*, 199 A.3d 954, 961 (Pa. Super. 2018) (citation and quotation marks omitted).

Appellant challenged only the possession element of the PWID offense. In addressing Appellant's claim, the trial court summarized the evidence, relevantly noting that "a significant amount of the heroin/fentanyl mixture was found in the bathroom of the [Coatesville] house with Appellant;" "the composition of the heroin/fentanyl mixture [that Appellant's workers sold to the CI] was the same as the composition of the heroin/fentanyl mixture seized at the [Coatesville] house;" and the CI arranged the drug purchases with Appellant. Trial Ct. Op., at 17-18.

In addressing the issue of whether Appellant had constructive possession of the drugs in the bathroom at Appellant's house, the trial court highlighted Appellant's actions to prevent the police from entering the bathroom and his efforts to flush the drugs down the toilet:

> In determining whether [ ] Appellant had possession of the controlled substances found in the bathroom, the jury was able to

consider all the facts and circumstances that shed light on the question of whether he had the intent and power to control the drugs.

We find that on February 8, 2019[,] Appellant's actions show his awareness of the drugs in the bathroom. It may be inferred from the evidence presented that Appellant rushed to the bathroom when law enforcement started knocking on the front door to the [Coatesville] house. He locked the door to delay entrance into the bathroom by the police, and he was disposing the drugs or attempting to flush the drugs down the toilet when the bathroom door was breached, and he was seen hovering over the toilet with wet hands.

The trial court further noted that the composition of the drugs the police found in the bathroom was the same as the drugs that the CI purchased from Appellant and the quantity of drugs were for sale of drugs and not personal use:

[Further,] Detective Sgt. Rubincan [ ] opined that the chemical composition of the drugs found in the bathtub was the same as the drugs sold to the CI on two separate occasions, and that the packaging was also the same as the packaging of the heroin/fentanyl mixture found in the bathroom. He also testified that the quantity of the controlled substances found was too voluminous to be possessed for personal use. He explained that the number of heroin/fentanyl mixture packets found in the bathroom could not be consumed by one individual, even one who has the gravest addiction. As a result, after considering the evidence in its totality and drawing all reasonable inferences in the light most favorable to the Commonwealth, we find that is sufficient evidence to show beyond a reasonable doubt that Appellant was in possession of cocaine and the heroine/fentanyl mixture with the intent to distribute them for sale.

*Id*. at 21-22.

Our review of the record supports the trial court's conclusion that the

Commonwealth presented sufficient evidence to prove that Appellant

- 16 -

constructively possessed the drugs found in the bathtub. As noted above, appellate courts review the evidence presented to the jury in the light most favorable to the verdict winner and it is solely within the jury's province to weigh the evidence and draw reasonable inferences from that evidence. We do not consider "just-as-likely" speculative scenarios in addressing sufficiency of the evidence claims as Appellant suggests we should do.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner and the reasonable inferences drawn therefrom, we conclude the evidence was sufficient to prove that Appellant constructively possessed the drugs found in the bathtub.

**\*\*\***

Appellant also challenges the sufficiency of the evidence supporting his convictions of conspiracy to deliver the drugs based on the CI's controlled buys on February 1 and 4, 2019. Appellant's Br. 2 at 16. He contends that he was merely "in the vicinity of the controlled buys," and no other evidence proved that he was involved in a conspiracy to deliver drugs. *Id*. at 19-20. We disagree.

Conspiracy is defined in our Crimes Code as follows:

(a) Definition of conspiracy. - A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

- 17 -

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a).

"In order to prove the existence of a criminal conspiracy, the Commonwealth must demonstrate that the defendant: (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Chambers*, 188 A.3d 400, 409–10 (Pa. 2018) (citation omitted). "At the heart of every conspiracy lies the common understanding or agreement between the actors. Implicit in any conspiracy is proof that an accused agrees to participate in the alleged criminal activity." *Id.* at 410 (citations, quotation marks, and ellipses omitted).

The existence of a conspiracy agreement is rarely proven with direct evidence. *Commonwealth v. Spotz*, 716 A.2d 580, 592 (Pa. 1998).

An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for **proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities.** Indeed, a conspiracy may be proven inferentially by showing the relation, conduct, or circumstances of the parties, and **the overt acts of alleged co-conspirators** are competent as proof that a criminal confederation has in fact been formed.

*Chambers*, 188 A.3d at 410 (citations and quotation marks omitted; emphasis added). Rather, the Commonwealth may prove a conspiracy

agreement by circumstantial evidence. ***Commonwealth v. Feliciano***, 67 A.3d 19, 23 (Pa. Super. 2013) (*en banc*). These circumstances include "the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." ***Id.*** (citation omitted). ***See also Commonwealth v. Bricker***, 882 A.2d 1008, 1017-18 (Pa. Super. 2005) (affirming PWID conspiracy conviction where overt act was committed by co-conspirator and not the defendant).

In addressing Appellant's conspiracy challenge, the trial court emphasized that Appellant, using the alias "Gotti," arranged the meeting time and place with the CI on February 1, 2019. Additionally, the officers observed him exit from the gold Mercury, briefly enter his house, and then return to the passenger seat of the vehicle. At this point, another man immediately drove Appellant to the Wawa to meet the CI. Tr. Ct. Op. at 19. ***See also*** N.T. Trial, 3/9/21, at 14 (Det. Shave), 73-74 (Det. Nangle). The court also noted that both Appellant and the driver exhibited the same conduct at the Wawa, getting into the back seat of other vehicles for a brief transaction before returning to the Mercury and driving away. Tr. Ct. Op. at 18.

Further, after the CI set up the February 4th controlled buy with "Gotti," surveilling officers observed Appellant immediately leave the Coatesville house, drive away in his vehicle, and return a short time later. Appellant then re-entered the house and another man immediately exited and drove a green Audi to the Dollar General store to meet the CI. The drugs the other man sold

the CI were in the same packaging and with the same chemical composition as the CI had purchased from Appellant a few days earlier. *Id.* at 7-8. The trial court concluded that the Commonwealth presented sufficient circumstantial evidence from which the jury reasonably inferred that Appellant was part of a conspiracy to sell heroin/fentanyl.

After viewing the record evidence and considering all reasonable inferences in the light most favorable to the Commonwealth, we agree with the trial court's conclusion. Moreover, it is reasonable to infer from Detective Sgt. Rubincan's expert testimony—regarding Appellant's use of an alias, multiple cell phones, a home where multiple people lived, runners to conduct the transactions, and identical packaging containing a heroin/fentanyl mixture of the same unique chemical composition in both sales—that Appellant and others had "an agreement to commit or aid in an unlawful act with another person or persons, [] with a shared criminal intent and, [] an overt act was done in furtherance of the conspiracy." *Chambers*, 188 A.3d at 410 (citation omitted).

In light of our standard of review, we conclude that sufficient evidence supports the jury's conspiracy conviction. Accordingly, Appellant's sufficiency challenges fail.

**G.**

In his final issue, Appellant asserts that the "sentencing court abused its discretion by applying an [OGS] of nine instead of eight[.]" Appellant's Br.

2 at 20. He contends that the court incorrectly applied an OGS of nine "because the OGS for the offenses was reduced to eight in 2020, prior to his sentencing in 2021." *Id.* at 14-15. He asserts, without citation to supporting authority, that since the "Sentencing Commission realized an OGS of nine was too harsh for these offenses, the sentencing court should have come to that conclusion as well." *Id.* at 20.

"A claim that the sentencing court used an incorrect OGS is a challenge to the discretionary aspects of one's sentence." *Commonwealth v. Williams*, 151 A.3d 621, 625 (Pa. Super. 2016). An appellant raising such a challenge is not entitled to review as of right; rather, a challenge in this regard is properly viewed as a petition for allowance of appeal. 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki*, 522 A.2d 17, 18-19 (Pa. 1987); *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014).

In order to obtain this Court's review, an appellant challenging the discretionary aspects of his sentence must comply with the following requirements: (1) file a timely notice of appeal; (2) preserve the issue at sentencing or in a motion to reconsider and modify sentence; (3) include within his brief a concise statement of the reasons relied upon for allowance of appeal as required by Pa.R.A.P. 2119(f); and (4) raise a substantial question that the sentence is inappropriate under the Sentencing Code. *Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa. Super. 2013).

Here, Appellant timely appealed, preserved his challenge in a post-sentence motion to modify sentence, and included a Pa.R.A.P. 2119(f)

Statement in his brief. His allegation that the sentencing court applied an incorrect OGS resulting in an excessive sentence raises a substantial question. ***Commonwealth v. Archer***, 722 A.2d 203, 210-11 (Pa. Super. 1998) (*en banc*). Accordingly, we proceed to consider the merits of Appellant's claim.

In 2018, the Sentencing Commission amended the sentencing guidelines to include crimes involving fentanyl, making the OGS nine for offenses involving less than one gram of fentanyl. 204 Pa. Code § 303.15 (June 1, 2018).

On December 6, 2019, the Sentencing Commission again amended the guidelines and reduced the OGS from nine to eight for an offense involving less than one gram of fentanyl. ***Id.*** (Dec. 6, 2019).

As the trial court aptly noted and of critical importance to our review of this issue, amendments to the sentencing guidelines "apply to all offenses committed on or after the effective date [of] the amendment[.]" 204 Pa. Code § 303.1(c); Tr.Ct.Op. at 25-26. Since Appellant committed his offenses in February 2019 and the Sentencing Commission amended the OGS for fentanyl in December 2019, the trial court properly used the OGS in effect when Appellant committed the crime and applied an OGS of nine.

Thus, we conclude the sentencing court did not abuse its discretion or err as a matter of law in applying an OGS of nine to Appellant's crimes.

H.

In conclusion, none of the issues Appellant raises on appeal have merit. Accordingly, we affirm his Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2023